COMMONWEALTH vs. HUMBERTO R. FEIJOO
(and twelve companion cases).

Plymouth. May 4, 1994. - February 14, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Indecent Assault and Battery. Consent. Rape. Practice, Criminal,* Trial of
indictments together, New trial. *Search and Seizure,* Warrant, Proba-
ble cause.

At the trial of an indictment for indecent assault and battery on a child
under the age of fourteen, in which the alleged conduct occurred before
the effective date of St. 1986, c. 187 (which added to G. L. c. 265,
§ 13B, the provision that a child under fourteen shall be deemed inca-
pable of consenting to conduct prosecuted under the statute), where the
Commonwealth failed to produce evidence that the twelve year old al-
leged victim did not consent or lacked the capacity to consent, the de-
fendant was entitled to a finding of not guilty. [490-491]

At the trial of four indictments for indecent assault and battery on a per-
son fourteen years of age or older, the defendant was entitled to find-
ings of not guilty where the Commonwealth produced no evidence that
the alleged victims lacked capacity to consent or that they did not con-
sent. [491]

At the trial of an indictment for rape, there was no evidence of force or
coercion to warrant a finding of guilty. [491-492]

Evidence at the trial of sexual offenses was sufficient to warrant the de-
fendant's convictions of statutory rape and rape of a child by force.
[492-493]

Evidence at the trial of two indictments for indecent assault and battery on
persons fourteen years of age or older warranted the jury in finding that
neither of the alleged victims had consented to the touching by the de-
fendant. [493]

At a criminal trial, the joinder of thirteen indictments alleging sexual
abuse of minors was proper, where the evidence in its totality showed a
common scheme or pattern of operation that tended to prove each inci-
dent alleged constituted part of a single plan. [493-495]

At a criminal trial, the defendant's motion to suppress evidence was cor-
rectly denied where the judge properly concluded that the warrant's
description of the items sought was sufficiently specific; that there was
probable cause for issuance of the warrant; and that the police had

properly seized certain items in plain view, not described in the warrant, where it was apparent that the items bore a nexus to the crime under investigation. [495-499]

There was no merit to a defendant's motion for a new trial based on an assertion that he was physically incapable of the sexual acts for which he was convicted, where the defendant had admitted his capability in his trial testimony. [499]

INDICTMENTS found and returned in the Superior Court Department, twelve on December 2, 1986, and one on December 9, 1986.

The case was tried before *Cortland A. Mathers*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Bernard Grossberg* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. This case is here on direct appellate review. The defendant appeals from single convictions of rape, G. L. c. 265, § 22(b) (1992 ed.), and rape of a child by force, G. L. c. 265, § 11A (1992 ed.), three convictions of rape of a child (statutory rape), G. L. c. 265, § 23 (1992 ed.), a conviction of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B (as appearing in 1984 ed.),[1] six convictions of indecent assault and battery on a person fourteen years of age or older, G. L. c. 265, § 13H (1992 ed.), and a conviction of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(b) (1992 ed.). The thirteen convictions involved nine alleged victims, each of whom was a male between twelve and seventeen years of age when the alleged offense or offenses against him oc-

---

[1]General Laws c. 265, § 13B, was amended by St. 1986, c. 187, which added the following provision to § 13B: "In a prosecution under this section, a child under the age of fourteen years shall be deemed incapable of consenting to any conduct of the defendant for which said defendant is being prosecuted." Because the alleged offense occurred before the effective date of the amendment, the pre-amendment version of the statute controls.

curred. The defendant was sentenced to life imprisonment on one conviction of rape of a child (statutory rape, c. 265, § 23) under indictment no. 83346. We shall refer to that child victim as P.C. The defendant was sentenced to imprisonment for not less than thirty nor more than fifty years on a second conviction of rape of a child (statutory rape) under indictment no. 83350, the sentence to run from and after the sentence on indictment no. 83346. The alleged victim was E.S. The defendant also was sentenced to imprisonment for not less than thirty nor more than fifty years for rape of a child (hereinafter A.H.) under indictment no. 83355, the sentence to run from and after the sentence on indictment no. 83346 and concurrently with the sentence on indictment no. 83350. The sentences on the ten other convictions were substantially less and were to be served concurrently with the sentence under indictment no. 83346.

We affirm the three convictions of rape of a child, G. L. c. 265, § 23 (indictment nos. 83346, 83350 and 83355). We affirm the conviction of rape of a child (P.C.) by force (indictment no. 83348), and we reverse the conviction of rape of W.R. (indictment no. 83353). We affirm two convictions of indecent assault and battery on a person fourteen or older (victims R.H. and J.R., indictment nos. 83358 and 83382), and we affirm the conviction of assault and battery by means of a dangerous weapon upon P.C. (indictment no. 83347). We reverse the four remaining convictions of indecent assault and battery on a person fourteen or older in which the alleged victims were A.J., D.G., P.C., and A.H. (indictment nos. 83359, 83357, 83349 and 83354), and we reverse the conviction of indecent assault and battery on a child under fourteen in which the alleged victim was J.O'D. (indictment no. 83360).

The defendant argues that all thirteen convictions must be reversed because his motions (1) to suppress evidence seized by police officers from his home, (2) for relief from prejudicial joinder of the several indictments for trial and (3) for a new trial, were wrongly denied. In addition, the defendant argues that his motions for required findings of not guilty of

statutory rape (G. L. c. 265, § 23) of P.C., rape of a child (P.C.) by force (G. L. c. 265, § 22A), and rape of W.R. (G. L. c. 265, § 22(*b*), were erroneously denied, as were his motions for required findings of not guilty of the seven charges of indecent assault and battery. The only convictions that the defendant does not challenge as unsupported by sufficient evidence as a matter of law are the statutory rape convictions with the alleged victims being A.H. (indictment no. 83355) and E.S. (indictment no. 83350), and the conviction of assault and battery on P.C. by means of a dangerous weapon (indictment no. 83347).

We shall recite facts that the jury would have been warranted in finding and that are generally helpful to an understanding of the issues on appeal. Later, in discussing the several convictions separately, we shall make such further references to the evidence, which is contained in nineteen volumes of transcript, as may be required to resolve the parties' contentions.

The offenses are alleged to have taken place between July, 1981, and July, 1986, during which period the defendant was between twenty-seven and thirty-three years of age. He weighed approximately 300 pounds. The defendant taught karate classes two or three times per week. In 1981 and 1982 the classes were taught in the defendant's home, and thereafter they were taught in a barn attached to the defendant's home. Between 1981 and 1986 the defendant was involved as an officer in the Sea Cadets, which is an organization similar to the Boy Scouts. All the alleged victims studied karate under the defendant and many of them were Sea Cadets. The defendant led them to believe that he was a Ninja and that Ninjas were the elite in karate, ranking higher than persons with black belts. The defendant told each alleged victim individually that he would be the defendant's protégé. Each was told the benefits that he would enjoy as a result of being the defendant's protégé. With respect to most of the alleged victims, the defendant's method of operation was to instruct them that, to succeed, they would have to identify their deepest fears or repulsions and overcome them. In one way or

another, the defendant encouraged each boy to choose "being gay" as the condition to be overcome. Also, the defendant encouraged the boys to overcome that condition by engaging in sexual activity with him.

First, we consider the conviction of indecent assault and battery on a child under fourteen. As we have noted, *supra* at n.1, the defendant's alleged criminal conduct occurred before the effective date of St. 1986, c. 187, which added to G. L. c. 265, § 13B, the provision that a child under fourteen shall be deemed incapable of consenting to the conduct with which the defendant is charged. Therefore, since "lack of consent is an element of the crime of indecent assault and battery, and the Commonwealth has the burdens of production and persuasion" as to that matter, *Commonwealth* v. *Burke*, 390 Mass. 480, 482 (1983), the Commonwealth had the burden to prove that J.O'D. did not consent to the conduct with which the defendant was charged in indictment no. 83360. The Commonwealth produced evidence that the defendant had obtained J.O'D.'s submission to the defendant's sexual advances by false representations or promises of social, economic or similar benefits. Such evidence is to be distinguished from evidence of coercion by intimidation, see *Commonwealth* v. *Caracciola*, 409 Mass. 648, 653-654 (1991), and is insufficient to warrant a finding that J.O'D.'s submission was nonconsensual. Also, although there was evidence in this case that the defendant was physically imposing and trained and experienced in violence, there is no evidence that J.O'D. submitted to the conduct with which the defendant was charged because of fear of physical harm if he refused. For all that appears in the evidence, J.O'D. submitted solely in return for promised benefits, and that does not constitute indecent assault and battery.

Of course, "[i]n order to give consent a person must . . . have the capacity to do so. Thus, the Commonwealth can meet its burden of production, on the issue of consent, by introducing evidence of the alleged victim's lack of capacity to consent." *Burke, supra* at 484. Here, however, although the Commonwealth introduced evidence that the alleged vic-

tim, J.O'D., was twelve years old when the conduct complained of occurred, it introduced no other evidence of lack of capacity to consent. We conclude that the jury would not have been warranted by that evidence alone in finding that J.O'D. lacked capacity to consent and that, as a result, he did not consent. Thus, the Commonwealth failed to produce evidence of J.O'D.'s lack of consent, and the conviction under indictment no. 83360 must be reversed.

For the same reasons, we reverse the convictions of indecent assault and battery on a person fourteen or older, involving A.J., D.G., P.C., and A.H., indictments numbered 83359, 83357, 83349, and 83354. We need not discuss the evidence especially bearing on those indictments except to point out that, although there was evidence that at the time of the alleged offenses the victims ranged from fourteen to seventeen years of age, there was no other evidence that they lacked capacity to consent or that, assuming capacity, they nevertheless did not consent to the defendant's conduct. As we have said in connection with indictment no. 83360, the jury would not have been warranted by the evidence of knowing submission in response to false promises of benefit, nor by evidence of the boys' ages, standing alone, in finding that they did not consent to the defendant's conduct.

We reverse one other conviction; the conviction of rape of W.R., indictment no. 83353. There was evidence of the following facts. W.R. was seventeen years old and a high school senior when he first attended the defendant's karate classes. He stayed at the defendant's home. The defendant told W.R. about several instances in which the defendant had resorted to violence and threats of violence. The defendant told W.R. that he wanted W.R. to be his protégé and take over his thirteen karate schools and eight million dollars worth of assets. The defendant told W.R. that, in order to be his protégé, W.R. would have to "form a bond" with the defendant. Then, the defendant woke W.R. up one night and told W.R. that the defendant would be waiting for W.R. in the defendant's bedroom; that "it's time." W.R. went into the bedroom and he and the defendant engaged in oral sex. Later, the de-

fendant told W.R. that W.R. had not enjoyed it so it was not worthy to be the bond. A few days later, "[p]retty much the same thing" happened, and the defendant and W.R. again engaged in oral sex.

In *Commonwealth* v. *Caracciola*, 409 Mass. 648, 653 (1991), this court held that "the force needed for rape may, depending on the circumstances, be constructive force, as well as physical force, violence, or the threat of bodily harm." The court distinguished that case from *Commonwealth* v. *Goldenberg*, 338 Mass. 377 (1959), by saying that, in *Goldenberg*, "there were no threats and no conduct which were calculated to instill fear in the complainant in order for the defendant to achieve his goal" (footnote omitted), while, in *Caracciola*, "[t]he evidence indicate[d] that the defendant wore a gun; that he ordered the victim into his car; that he named a number of police officers; that he gave her a false name; and that he told her he was a police officer, and would imprison her if she did not obey him. The defendant made the complainant beg him not to 'lock her up.' The facts indicate[d] that the woman was 'petrified' by the defendant's threats that he would 'lock her up.' " *Id.* at 654. The instant case is not governed by *Caracciola*. Here, the jury would not have been warranted in finding that W.R. was afraid or that he submitted to the defendant because the defendant was intimidating rather than submitting for another reason such as hoped for benefits as the defendant's protégé. The evidence did not warrant a finding that W.R. was raped by the defendant. We reverse the conviction under indictment no. 83353.

We turn now to the seven convictions that we affirm. We shall first consider the defendant's argument that four of those convictions were unwarranted by the evidence as a matter of law. The defendant's arguments with respect to the indictments alleging statutory rape of P.C. (no. 83346) and rape of a child, P.C., by force (no. 83348), appear to be premised on a misreading of the record. The defendant argues that the record shows that the incidents relied on by the Commonwealth occurred after P.C.'s sixteenth birthday. The

record contains evidence, however, that P.C.'s birth date was July 31, 1970, and that P.C. and the defendant engaged in oral sex in the summer of 1986 before P.C.'s sixteenth birthday, thus supporting the conviction of statutory rape, and that, on another occasion that summer, before July 31, without warning and therefore without P.C.'s having had an opportunity to consent or object, the defendant forced a wooden club into P.C.'s rectum, thereby committing rape of a child by force. See *Commonwealth* v. *Gallant*, 373 Mass. 577, 584 (1977) ("[T]he definition of 'unnatural sexual intercourse' must be taken to include oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body"). The evidence was sufficient to warrant the convictions of statutory rape of P.C. and rape of a child, P.C., by force.

The remaining two convictions that the defendant challenges on the ground that they are not supported by legally sufficient evidence are those of indecent assault and battery on persons fourteen or older, the persons being R.H. and J.R. We need not discuss the sordid details. It is enough to note that the evidence was sufficient to warrant the jury in finding that each of these sixteen year old boys did not consent to the sexual touching by the defendant that occurred because there was no forewarning and, as soon as the touching began, the boys objected and withdrew.

We turn now to the defendant's arguments that all of the convictions must be reversed because of the assertedly erroneous denial of the defendant's motions for (1) relief from prejudicial joinder of all the indictments for trial, (2) suppression of evidence, and (3) new trial.

Massachusetts Rules of Criminal Procedure 9 (a) (3) provides for the joinder for trial of charges of "related" offenses. Rule 9 (a) (1) provides that "[t]wo or more offenses are related offenses if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." 378 Mass. 859 (1979).

.

Under rule 9 (d), "[i]f it appears that a joinder of offenses or of defendants is not in the best interests of justice, the judge may upon his own motion or the motion of either party order an election of separate trials of counts . . . or provide whatever other relief justice may require." *Id.* The defendant argues that the offenses alleged in the several indictments in this case were not "related." He also argues that joinder of these indictments for trial improperly allowed the Commonwealth to bolster each charge simply by showing that the defendant had a propensity to commit such offenses.

If these thirteen indictments were to be tried separately, evidence at each trial of the defendant's conduct charged in the indictments not then being tried would be inadmissible if its only relevance to the case on trial would be to show the defendant's criminal disposition. *Commonwealth v. Stone,* 321 Mass. 471, 473 (1947). In such circumstances, "there is the danger that, because a defendant appears to be a bad man capable of, and likely to commit, such a crime as that charged, a jury might be led to dispense with proof beyond a reasonable doubt that he did actually commit the crime charged." *Id.* See McCormick, Evidence § 188 (2d. ed. 1972). The same danger would be present if the only relevance of the evidence would be to show the defendant's criminal disposition and the indictments were joined for trial. Joinder in those circumstances would expose the jury to information that, in fairness to the defendant, they should not have. Thus, "the propriety of joining any one of the [thirteen] indictments turns, in large measure, on whether evidence of the other [twelve] offenses would have been admissible at a separate trial on each indictment." *Commonwealth v. Mamay,* 407 Mass. 412, 417 (1990), citing *Commonwealth v. Gallison,* 383 Mass. 659, 672 (1981). See also *Commonwealth v. Blow,* 362 Mass. 196, 200 (1972).

Here, however, the relevancy to each indictment of the conduct with which the defendant is charged in all thirteen indictments goes beyond a simple demonstration of criminal propensity. In addition to propensity, the evidence in its totality shows a common scheme and a pattern of operation

that tends to prove all the indictments. The evidence showed that the complainants were the defendant karate teacher's students, and that the defendant used that relationship in each case to induce the complainants' cooperation and submission to his desire for homosexual activity. In almost every case, the modus operandi was the same; the defendant vigorously encouraged each of his young victims to "overcome his barriers" by submitting to the defendant's sexual desire. Such evidence would have been admissible at all the trials if each indictment had been tried separately, not to show mere criminal propensity but to show that each incident occurred pursuant to an ongoing plan, *Commonwealth* v. *Schoening,* 379 Mass. 234, 242 (1979). Thus, joinder of the indictments for trial was proper. *Commonwealth* v. *Montanez,* 410 Mass. 290 (1991). *Commonwealth* v. *Mamay, supra* at 417. The charges set forth in the thirteen indictments are of "related offenses" as defined by Mass. R. Crim. P. 9 (a) (1) because they "arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan," and therefore, pursuant to rule 9 (a) (3), they were appropriately joined for trial.

The defendant's motion to suppress also was properly denied. "[O]f course [we need to] consider the defendant's challenges only as to seized evidence that was admitted at trial," *Commonwealth* v. *Beldotti,* 409 Mass. 553, 556 (1991), and offered by the Commonwealth. See *Commonwealth* v. *Bourgeois,* 404 Mass. 61, 66 (1989). We observe that the only seized items that were admitted in evidence, the nonsuppression of which the defendant now challenges as prejudicial, were four plaster penis molds and numerous sexually oriented (mostly "gay") magazines. Those items were seized in the course of a search pursuant to a search warrant that the defendant argues was defective because it failed to describe with particularity the items to be seized and, in addition, was issued without a showing of the necessary probable cause to believe that there was a nexus between the items described in the warrant and the crimes under investigation. Also, although the molds and the magazines were discovered

and seized during the course of a search pursuant to the aforesaid warrant, they were not described in the warrant. The defendant argues that, when those items were seized, they were not in plain view and, in any event, there was an insufficient nexus between those items and the crimes being investigated.

After an evidentiary hearing, a judge in the Superior Court denied the defendant's motion to suppress. The judge set forth his reasoning in a memorandum that states in part the following:

"On October 28, 1986, pursuant to an affidavit filed by the State Police, a judge of this court issued a warrant to search the defendant's premises in Scituate. The warrant and affidavit upon which it was based sought fourteen separate kinds of evidence (a through n).

"I find that this warrant is in no respect a general warrant containing in whole or in part language which might be held to contaminate the entire process, such as 'and other stolen property,' see *Kinsey* v. *State*, 602 P.2d 240 [Okla. Crim. App. 1979], but, on the contrary, is almost totally specific.

"The affidavit supports the conclusion that the officers had probable cause to believe the defendant, a karate teacher at the premises in question, as well as Commander of the Scituate Sea Cadet program, had committed acts of sexual abuse upon boys ages 14 - 18 who were under his tutelage. The sexual abuse involved masturbation, oral and anal intercourse, and body massage. Video tapes were made between [the] defendant and one victim in the course of such conduct. Blindfolds, hats, caps, bandanas, khaki pants and shirt, headbands, tape, whips, cigarette lighters, night stick or club, dirty movies, and a video camera were employed in these processes.

"At the time of the issuance of the search warrant, the identity of at least four of the alleged victims [four of the nine boys ultimately alleged to be victims in the thirteen indictments herein] was known to the police. I find on the basis of the information set forth within the affidavit (which indicated this course of conduct had continued over a period of several years) the police had probable cause to believe that other victims existed and were, as yet, unknown to them. Upon execution of the warrant, the police seized items that may properly be construed as described in the affidavit under paragraphs a, b and c - (videos); g - blindfolds, headbands, bandanas; h - blue baseball caps; i - whips; j - wooden furniture leg and wooden stick with red and black bands; k - 2 inch masking tape; m - 2 cigarette lighters (Bic), and n - khaki shirt and trousers.[2]

. . .

"During the course of execution of the warrant, the evidence furnished to me at the hearing supports a finding that officers came upon the following items:

"(1) four [phallic] shaped plaster moulds . . . ;
"(5) eighteen gay orient[ed] magazines . . . ;
"(6) four Playgirl magazines . . . ;
"(7) one Viva magazine . . . .

"Credible evidence was furnished to me to the effect that the premises entered by the police were found to be a shambles requiring some effort to distinguish the material that lay before the officers. I do not conclude that

---

[2]The videos, as described in the affidavit under paragraphs a, b, and c, were as follows:

"a. Home videos depicting explicit sexual activity of [A.H.] and/or [the defendant].

"b. Home videos depicting explicit sexual activity of young men under the age of 18 years.

"c. Commercial videos depicting explicit sexual activity. . . ."

any examination conducted by them was in the nature of a rummage type search, but rather occurred in pursuance of the mandate of the warrant. The warrant clearly afforded the authority to look for the items specified and to examine the premises for business records indicating membership in the defendant's karate and/or sea cadet programs. If, in the reasonable pursuit of this goal, which I find to have been the case, the police came upon items whose nexus to the unlawful conduct being investigated becomes patently clear, it would be unreasonable to deny them the right to seize these items."

Our review of the search warrant affirms the judge's conclusion that the warrant's description of the items to be searched for and seized was sufficiently particularized to satisfy constitutional requirements. As the judge stated in his memorandum, the language of the warrant was "almost totally specific" and contained no language of general import such as "other stolen property" which might contaminate the search.

We also agree with the judge that the officer's affidavit in support of the warrant, stated by the affiant to be based on information he acquired from four of the alleged "victims" as well as on the officer's experience in investigating sexual abuse of children and on relevant writings, supports the conclusion that, when the search was conducted, there was probable cause to believe that the several items listed on the warrant would be found on the defendant's premises. The police, therefore, were properly there searching for the articles described in the warrant, and they rightfully seized similar items that, although not specifically described in the warrant, were discovered by the police in plain view as they rightfully searched for the described items. The officers had probable cause to believe that the penis molds and magazines bore a nexus to the crimes under investigation. The motion to suppress was properly denied. See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 330 (1980) ("When items in plain view are seized but are not described in the warrant, the Common-

wealth bears the burden of showing at the hearing on the motion to suppress that, at the time of seizure, it was apparent that the items bore a nexus to the crime committed. *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 304 [1979]"); *Commonwealth* v. *Fudge*, 20 Mass. App. Ct. 382, 386-387 (1985) (police properly seized items that were in plain view and were similar to those listed in the warrant).

We deal briefly with the only other issue raised by the defendant. The defendant moved for a new trial grounded on his assertion that he was impotent and therefore incapable of the sexual acts for which he was convicted. The trial judge denied the motion, noting that "by his trial testimony this defendant graphically described his ability to attain erection and his ejaculation process. He now presents a medically unsubstantiated affidavit alleging impotence. The motion is without merit. [The] motion [is] denied." We agree with the judge that the motion was without merit and that its denial was appropriate. We agree, too, with the judge's subsequent denial of the defendant's motion to reconsider.

We affirm the three convictions of rape of a child (indictment nos. 83346, 83350 and 83355), the conviction of rape of a child by force (indictment no. 83348), two of the convictions of indecent assault and battery on a person fourteen or older (indictment nos. 83358 and 83382), and the conviction of assault and battery by means of a dangerous weapon (indictment no. 83347). We reverse one conviction of rape (indictment no. 83353), four convictions of indecent assault and battery on a person fourteen or over (indictment nos. 83359, 83357, 83349 and 83354), and the conviction of indecent assault and battery on a child under fourteen (indictment no. 83360). On those indictments the verdicts are set aside and judgments are to enter for the defendant.

*So ordered.*