## COMMONWEALTH *vs.* JOHN R. HANLON.

No. 96-P-1746.

Plymouth. October 21, 1997. - May 21, 1998.

Present: WARNER, C.J., KASS, & LENK, JJ.

*Rape. Assault with Intent to Rape. Practice, Criminal,* Required finding,
Double jeopardy, Verdict, Instructions to jury, Sentence. *Evidence,* Cred-
ibility of witness, Prior misconduct, Pattern of conduct, Verbal complete-
ness. *Constitutional Law,* Double jeopardy.

Where a criminal defendant, following a mistrial, had obtained a final decision
on appeal regarding the legal sufficiency of the evidence presented at that
trial, the defendant was barred from raising the same issue on appeal fol-
lowing the retrial of the indictments. [813-814]
There was no merit to a criminal defendant's argument that the judge erred in
denying his motions for required findings of not guilty because the
testimony of the main witness was unreliable [814-815], nor was the
defendant entitled to a required finding of not guilty where he failed to
demonstrate that any material portion of the Commonwealth's evidence
was conclusively deficient [815].
Principles of double jeopardy did not bar the retrial of a criminal defendant
following the inability of the jury at his first trial to agree upon a verdict,
where the Supreme Judicial Court, in the defendant's appeal from the first
trial, had determined that the evidence in the first trial was legally suf-
ficient to sustain a conviction. [815-816]
A criminal defendant could not support a posttrial motion for the entry of a
finding of not guilty or for a new trial with a videotape of a television
news interview of two jurors, inasmuch as evidence concerning the subjec-
tive mental processes of jurors is not permissible to impeach a verdict.
[816]
Discussion of the standards, in a criminal case, for the admission of evidence
of uncharged bad acts of the defendant similar to the offenses charged.
[817-819]
At the trial of indictments for forcible rape of a child under the age of sixteen,
the trial judge properly admitted testimony that the defendant had, within a
nine-year period following the charged acts, committed strikingly similar
acts of sexual assault, where such evidence was relevant both to
demonstrate the defendant's ongoing plan or pattern of sexually assaulting
young men, and to corroborate the testimony of the complaining witness,
and where the judge provided limiting instructions to the jury both before
the evidence was admitted and during his final charge. [816-817, 819-821]

At the trial of indictments, prejudice, if any, in the proper admission of evidence of uncharged bad acts by the defendant was cured by the judge's limiting instructions to the jury [821-822], and the judge's final charge to the jury properly instructed them on their consideration of such evidence [822-823].

At the retrial of indictments, the defendant was not entitled to have the whole transcript of his testimony from the previous trial admitted in evidence where portions of the defendant's testimony were irrelevant [823], nor did the introduction of such evidence call undue attention to the defendant's failure to testify, in the circumstances [823-824].

On appeal from convictions of forcible rape of a child under the age of sixteen, there was no merit to the defendant's contention that sentences imposed by the judge, which did not exceed statutory limits, were impermissibly severe. [824]

INDICTMENTS found and returned in the Superior Court Department on June 22, 1992.

The cases were tried before *Cortland A. Mathers*, J.

*Marshall E. Johnson* for the defendant.

*John E. Bradley*, Assistant District Attorney, for the Commonwealth.

LENK, J. After a jury trial in the spring of 1994, the defendant was convicted of two counts of forcible rape of a child under the age of sixteen, G. L. c. 265, § 22A, and two counts of assault with intent to rape a child under the age of sixteen, G. L. c. 265, § 24B.[1] A first month-long jury trial in the fall of 1993 had ended with a hung jury and a mistrial. On appeal, the defendant claims that (1) there was insufficient evidence to withstand a motion for a required finding of not guilty at either trial; (2) he was placed in double jeopardy by being required to undergo a second trial; (3) the trial judge erred by denying the defendant's motion for a new trial on the basis of a posttrial television interview with two jurors; (4) the trial judge erred in admitting evidence of uncharged sexual assaults against people other than the victim; (5) the trial judge's instructions were insufficient to cure the prejudicial effect of the evidence of uncharged acts; (6) the trial judge erred in admitting in evidence portions of the defendant's testimony from the first trial; and (7) the sentence impermissibly punished the defendant for exercising his right to trial.

[1]The defendant was originally charged with three counts of assault with intent to rape a child. The trial judge at the first trial dismissed one count at the close of the Commonwealth's case, because the evidence was insufficient to sustain a finding of guilty on that charge.

1. *Facts.* We recite such facts as the jury would have been warranted in finding and that are helpful to an understanding of the issues on appeal. All of the indictments arise from assaults committed in Massachusetts against a single victim, whom we shall call Ward Devlin (Devlin). The charged assaults occurred in the defendant's Scituate cottage between 1980 and 1981 when Devlin was under the age of sixteen. At the second trial, in addition to the victim's testimony and that of his two younger brothers, the Commonwealth was permitted to introduce testimony of two unrelated young men who testified to similar uncharged acts of sexual assault by the defendant. Most of these uncharged assaults took place in the defendant's ski chalet in Vermont. At both trials, Devlin testified that the defendant had assaulted him in both Scituate and Vermont.

The victim testified that his family was close to the defendant and deeply involved in their local parish, where the defendant, a Roman Catholic priest, worked from 1975 to 1985, first as an associate pastor and then as a pastor. The victim was an altar boy from age nine to age fifteen and, along with other boys in the parish, performed maintenance work on the church and the defendant's houses in Scituate and Vermont.

Devlin went to the defendant's Vermont house in the spring or summer of 1980, when he was thirteen, to paint the house and to have the defendant counsel him regarding his troubled relationship with his parents. Devlin testified that the trip to Vermont was the first time the defendant sexually assaulted him. Devlin testified that, on his first night in Vermont, he and the defendant slept in twin beds in the same room, and that the defendant convinced him to sleep naked, as the defendant himself was doing. The defendant later got into Devlin's bed, claiming to be cold, and sexually assaulted him. The defendant did the same the next night. Over the next several years, Devlin sometimes spent nights at the defendant's Scituate cottage and in Vermont, ostensibly to perform maintenance work and to get away from his family, and similar sexual assaults took place.

In 1981, the defendant began bringing Devlin's younger brother, whom we shall call Martin, to Vermont for skiing trips. From 1981 through 1988, the defendant and Martin skied together fifty to sixty times. Martin testified that on their first trip to Vermont, the defendant told him not to sleep in his underwear because it would restrict his circulation. Later that night, the defendant climbed into Martin's bed claiming to be

cold, and touched Martin sexually. Martin testified that the defendant assaulted him sexually on every trip they took.

Devlin's youngest brother, whom we shall call Caleb, went to Vermont with the defendant on one occasion in 1987. Caleb testified that the defendant told him to sleep naked, and that they should share a bed to keep warm. The defendant then sexually assaulted Caleb.

At the second trial, two other young men testified that the defendant had abused them. Charles Hollis[2] testified that from 1987 through 1989, he went skiing in Vermont with the defendant seven times, and the defendant sexually assaulted him each time. Douglas Zack[3] testified that between 1990 and 1991 he was sexually assaulted by the defendant in Vermont on several occasions. Both young men testified that the defendant convinced them to sleep naked, usually claiming that underwear restricted the circulation of blood to the genitals, and would enter their beds claiming to be cold.

Like the Devlin family, the Hollises and the Zacks were closely connected to their parish where the defendant served as a priest. All the victims were altar boys, and their parents taught Sunday school classes or otherwise assisted the church. The defendant was confessor to each boy at the time when he began abusing him.

2. *Sufficiency of the evidence at the first trial.* Following the mistrial and after the Commonwealth announced its intention to retry the defendant, the defendant moved to dismiss the indictments on the ground that the prosecution's evidence was legally insufficient to warrant his conviction. The judge denied this motion, and the defendant sought relief before a single justice of the Supreme Judicial Court under G. L. c. 211, § 3 (as amended by St. 1992, c. 379, § 61). The single justice denied the petition and, on appeal, the court affirmed the denial, concluding that there was sufficient evidence for a rational trier of fact to find the essential elements of the crimes charged beyond a reasonable doubt. *Hanlon* v. *Commonwealth*, 419 Mass. 1005, 1006 (1995). If the defendant believed at the time that the court had overlooked points of law or fact, he could have petitioned for a rehearing under Mass.R.A.P. 27, as amended, 396 Mass. 1218 (1986). Otherwise, there was a final decision on the issue, and

---

[2]A pseudonym.

[3]Also a pseudonym.

we deem the defendant precluded in such circumstances from again raising the same claim before us.[4]

3. *Required finding of not guilty at the second trial.* At his second trial, the defendant moved for a required finding of not guilty at the conclusion of the Commonwealth's case, at the close of all the evidence, and again after the jury returned a guilty verdict, maintaining each time that the evidence was insufficient to convict him. The trial judge denied all of these motions; on appeal, the defendant claims that it was error to do so.

We review the denial of a motion for a required finding of not guilty to determine "whether the evidence, in its light most favorable to the Commonwealth . . . is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged." *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), quoting from *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975). Additionally, the evidence and the permissible inferences drawn from that evidence must be sufficient to "bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." *Id.* at 677, quoting from *Commonwealth* v. *Cooper*, 264 Mass. 368, 373 (1928).

The defendant contends that the victim's evidence was insufficient for reasonable jurors to convict the defendant because there was also evidence introduced during the Commonwealth's case, on both direct and cross-examination, that the victim had

---

[4]In any event, were we to examine substantively the defendant's contention that the evidence at the first trial was insufficient to sustain a conviction, we would conclude that it is without merit. The Commonwealth's evidence was essentially the same at both trials and, as we discuss *infra* at 814-815, the evidence at the close of the prosecutor's case in the second trial was sufficient. The jury's inability to reach a verdict the first time does not determine this issue. To the extent that the defendant contends that the Commonwealth's case at the first trial deteriorated after the close of all the evidence, he relies upon certain Probate Court records showing that he did not inherit the Scituate property until April, 1982, and upon testimony that he was not permitted to make renovations until after that time. His point is that Devlin's claims of having been sexually assaulted in 1980, when at the house to work on it, are thus shown to be conclusively incorrect. There was, however, testimony that the defendant had hired Devlin and other boys to paint and do maintenance work on the house before he inherited it. Also, Devlin dated the first Scituate assault by remembering it as having occurred in the summer following his surgery in the winter of 1979. This was in sum a matter of credibility for the jury.

a history of lying, including lying in statements made under oath, as well as a history of alcohol abuse. Reduced to essentials, the defendant's argument is that the victim's testimony was unreliable and cannot suffice as evidence to convict the defendant. The claim that this witness's testimony is unreliable, however, is the equivalent of the assertion that it is not credible, which, it is well-established, is a matter for the jury to decide. *Commonwealth* v. *James*, 424 Mass. 770, 785 (1997). A witness's statements are to be taken as probative evidence. *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 411 (1978). When assessing the sufficiency of the evidence, we "resolve issues of credibility in favor of the Commonwealth." *Commonwealth* v. *James*, 424 Mass. at 785.

Here, the victim testified to every element necessary for each indictment, and the defendant presented no documentary or otherwise physically verifiable evidence to rebut conclusively the victim's testimony. The sole issue was whether the jury believed his testimony. The jury is the proper forum for assessing credibility. *Ibid.*

The defendant also moved for a required finding of not guilty at the close of all the evidence and after the jury was discharged, claiming that the Commonwealth's case had deteriorated after it had rested. As discussed above, we may look to all the evidence to determine if the defendant has shown that a necessary element of the Commonwealth's case is conclusively unproven. *Kater* v. *Commonwealth*, 421 Mass. 17, 20 (1995). The evidence presented at the second trial was testimony concerning Devlin's reputation as a liar, and evidence that he expected to receive a $900,000 settlement as a result of "a case involving a priest" (presumably, the defendant). Neither is sufficient to demonstrate any material portion of the Commonwealth's evidence conclusively deficient. The defendant presents no additional reasons why the renewed motion should have been granted after the jury returned a guilty verdict.

4. *Double jeopardy claim.* The defendant contends that he was placed in double jeopardy by being required to undergo a second trial after the first ended in mistrial. "[W]hen the Commonwealth has failed to present evidence legally sufficient to support a conviction, and the defendant has moved for a required finding of not guilty, jeopardy terminates when a judge declares a mistrial after the jury fails to agree on a verdict. . . . [B]ecause double jeopardy principles prohibit *trying* a defendant

twice for the same offense [citations omitted], the defendant is entitled to a review of the legal sufficiency of the evidence before another trial takes place." *Berry* v. *Commonwealth*, 393 Mass. 793, 798 (1985). The defendant was given just such a review, with the court determining that the evidence was legally sufficient to sustain a conviction. *Hanlon* v. *Commonwealth*, 419 Mass. at 1006.

5. *Posttrial motion.* Following the jury's verdict of guilty on all the indictments, the defendant moved under Rule 25(b)(2) of the Massachusetts Rules of Criminal Procedure for the entry of a finding of not guilty or, in the alternative, for a new trial. The trial judge denied this motion. In support of the motion, the defendant presented a videotape of a television news interview with two jurors who stated that the testimony of Hollis and Zack convinced them to convict the defendant. The defendant contends that the jurors' statements demonstrate the prejudicial effect of the evidence of Hollis and Zack which, he argues, was improperly admitted.

Evidence concerning the subjective mental processes of jurors is not permissible to impeach a verdict. *Commonwealth* v. *Fidler*, 377 Mass, 192, 198 (1979). This forecloses the defendant's argument that the jurors' unsworn statements regarding their decision may be used to attack the verdict. Because the trial judge properly admitted the testimony of Hollis and Zack (see section 6, *infra*), the defendant has demonstrated neither error nor resulting prejudice.

6. *Bad act evidence.* The trial judge admitted the testimony of four young men who claimed to have been assaulted sexually by the defendant over a period of approximately nine years following the charged sexual assaults on Devlin. In his written decision allowing the Commonwealth's motion in limine to admit such evidence, the trial judge observed that "[t]he evidence proffered by the Commonwealth . . . makes out a unique and insidious scheme over a nine year period to isolate and anally rape five male children, all alt[a]r boys of the defendant priest, by feigning concern for the welfare of their testicles and getting into bed with them." In limiting instructions given to the jury when each of the four testified, the judge told the jury in essence that they could not consider such evidence to demonstrate the defendant's propensity to assault boys sexually, but could consider it to show a pattern or course of conduct, a modus operandi, a common scheme or plan to

exploit the boys' and their families' trust in the Catholic church, or to corroborate Devlin's testimony. In final jury instructions, the judge told the jury that the permissible purposes for which they could consider such evidence included that of showing either the defendant's motive or intent with respect to Devlin or a common scheme or plan to abuse sexually young men with whom he came in contact as a priest in two parishes.

The defendant contends that the testimony of all four men should not have been admitted because (1) it was not sufficiently similar to the indicted conduct; (2) all the uncharged acts were too temporally remote from the charged assaults; and (3) the prejudicial effect of the evidence outweighed any probative value it may have had.

The rule remains that evidence of uncharged criminal acts against third parties as well as against a complaining victim is not admissible to show a defendant's propensity to commit the charged crime. *Commonwealth* v. *Almeida*, 42 Mass. App. Ct. 607, 612 (1997). It is also well established that the rule does not render inadmissible such evidence if relevant for other purposes. Thus, evidence of uncharged bad acts may be admitted to show, for example, common plan, pattern of conduct, intent, or motive. *Commonwealth* v. *King*, 387 Mass. 464, 472 (1982). *Commonwealth* v. *Helfant*, 398 Mass. 214, 224-225 (1986). *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. 758, 760-761 (1997). See Liacos, Massachusetts Evidence § 4.4.7 (6th ed. 1994).

Evidence of uncharged acts similar to the offense charged is admissible to show a common plan or pattern of conduct which may explain the defendant's intent or modus operandi, *Commonwealth* v. *Schoening*, 379 Mass. 234, 242 (1979); *Commonwealth* v. *Fleury-Ehrhart*, 20 Mass. App. Ct. 429, 431 (1985); *Commonwealth* v. *Odell*, 34 Mass. App. Ct. 100, 103 (1993); *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. at 760-761; to corroborate the victim's testimony, *Commonwealth* v. *King*, 387 Mass. at 472; or to counter the defendant's denial, *Commonwealth* v. *Maimoni*, 41 Mass. App. Ct. 321, 327 (1996). The case law is particularly clear that evidence of uncharged sexual misconduct, when not too remote in time, "is competent to prove an inclination to commit the [acts] charged in the indictment . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue." *Commonwealth* v. *King, supra* at 470, quoting from *Commonwealth*

v. *Bemis*, 242 Mass. 582, 585 (1922). Such evidence may also be admitted to corroborate the victim's testimony, as it tends to "show the . . . disposition of the parties," *Commonwealth* v. *Piccerillo*, 256 Mass. 487, 489 (1926), thus "render[ing] it not improbable that the act might have occurred." *Ibid.*, quoted by *Commonwealth* v. *King, supra.*[5]

Evidence offered for the purpose of showing a common plan or course of conduct can be admitted where each incident is part of an ongoing plan, *Commonwealth* v. *Feijoo*, 419 Mass. 486, 495 (1995); where it supports the inference that the defendant had a plan or pattern of conduct to commit the charged offense, *Commonwealth* v. *Maimoni*, 41 Mass. App. Ct. at 327; or where it corroborates the victim's testimony. *Commonwealth* v. *King*, 387 Mass. at 472. Nonetheless, evidence of a sexual assault on a person other than the victim is only admissible if it is connected "in time, place, or other relevant circumstances to the particular sex offense for which the defendant is being tried." *Id.* at 470 (citation omitted).[6] The conduct toward other victims must form a "temporal and schematic nexus" which renders the evidence admissible to show a common course of conduct regarding the victims. *Commonwealth* v. *Barrett*, 418 Mass. 788, 794 (1994). Thus, the evidence of uncharged acts need not have been against persons closely related to the complaining witness, where the evidence is sufficiently related in time and location, *Commonwealth* v. *Fleury-Ehrhart*, 20 Mass. App. Ct. at 432, or where the assaults

[5]The doctrinal basis for the allowance of such prior bad act evidence is not without its critics, however, who question its logical consistency and ultimate coherence. See, e.g., *Commonwealth* v. *King*, 387 Mass. at 477-480 (O'Connor, J. dissenting); *Commonwealth* v. *Helfant*, 398 Mass. at 234-239 (O'Connor, J. dissenting); Bryden and Park, "Other Crimes" Evidence in Sex Offense Cases, 78 Minn. L. Rev. 529 (1994); Reed, Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases, 21 Am. J. Crim. L. 127 (1993). While prohibiting the admission of testimony to demonstrate a defendant's propensity to commit the crime charged, *Commonwealth* v. *Helfant*, 398 Mass. at 224, our cases also recognize the continuing vitality of *Commonwealth* v. *Bemis, supra*, and *Commonwealth* v. *Piccerillo, supra*, which permit evidence of prior bad acts to demonstrate the defendant's inclination or disposition, notwithstanding the closely related and in many contexts interchangeable use of the terms "propensity," "inclination," and "disposition."

[6]In *Commonwealth* v. *King, supra*, evidence that the defendant had sexually assaulted the complaining victim's brother was admissible because the abuse occurred during the same time and in the same place, the victims were close in age, and the abuse in both instances took the same distinctive form.

are closely related in form. *Commonwealth* v. *Feijoo*, 419 Mass. at 495.

Here, the trial judge admitted the evidence as relevant to demonstrating the defendant's ongoing plan or pattern of behavior, and also as corroboration of the testimony of Ward Devlin. The judge determined that the evidence showed a unique scheme, pursued for about a decade, to isolate and rape altar boys whose families had close ties to the Catholic church and to the defendant. Each boy had a similar relationship with the defendant, the assaults occurred in the same locations, and the manner in which the priest approached the boys was similar. The testimony of each victim corroborated the pattern of conduct testified to by Ward Devlin.

As in *Commonwealth* v. *Feijoo*, each witness testified that the defendant used the same ploy to get the victim alone, naked, and vulnerable to his assault. Using that evidence, the jury could infer that the charged assaults were part of an ongoing plan. *Commonwealth* v. *Feijoo*, 419 Mass. at 495. The similarity of the testimony of each witness corroborated the testimony of Ward Devlin. Two of the witnesses were unrelated to the victim, but the lack of relationship to the victim does not make the evidence inadmissible. See *Commonwealth* v. *Helfant*, 398 Mass. at 226-227; *Commonwealth* v. *Feijoo*, 419 Mass. at 495; *Commonwealth* v. *Fleury-Ehrhart*, 20 Mass. App. Ct. at 431; *Commonwealth* v. *Maimoni*, 41 Mass. App Ct. at 326-327.

The defendant argues that even if the uncharged acts were similar to the indicted acts, they were too temporally remote to be admissible. To be sure, evidence of uncharged acts that are too remote in time is not admissible if the charged and uncharged acts are not sufficiently similar. *Commonwealth* v. *Yetz*, 37 Mass. App. Ct. 970, 971 (1995). When the uncharged offenses are committed against a person other than the complaining victim, there must be both a schematic similarity and a temporal connection for the evidence to be admissible. *Commonwealth* v. *Barrett*, 418 Mass. at 794.

There is no bright line test, however, for measuring remoteness. *Commonwealth* v. *Helfant*, 398 Mass. at 228 n.13. *Commonwealth* v. *Calcagno*, 31 Mass. App. Ct. 25, 27 (1991). When the uncharged misconduct is "one instance in a continuing course of related events," or the conduct is unusual and particularly similar to the charged acts, the allowable time period is greater. *Commonwealth* v. *Helfant*, 398 Mass. at 228 & n.13.

A hiatus of two years between assaults was too long to permit evidence of the uncharged offense when the incidents did not occur in the same place, and the form of conduct was not similar.[7] *Commonwealth* v. *Yetz*, 37 Mass. App. Ct. at 971. In *Yetz*, because of the lack of similarity between offenses, there was no temporal and schematic nexus to make the evidence admissible. *Ibid.* A break of three years was not too long in *Helfant*, however, even though the two victims were unrelated, because of the distinctiveness of the conduct. *Commonwealth* v. *Helfant*, 398 Mass. at 228.

In this case, there was evidence that the defendant was abusing altar boys from his own parish almost continually over a decade. Each young man testified to assaults which followed a distinct and similar pattern. Although the last witness claimed to have been abused in 1990 and 1991, nine years after the last charged act, this testimony was not too remote, given the continuing nature of the pattern, and the striking similarity of each incident to the charged acts. Contrast *Commonwealth* v. *Yetz*, 37 Mass. App. Ct. at 971 (evidence excluded where it was both temporally remote and unrelated to the charged conduct). Here, as in *Helfant*, *supra*, the evidence of uncharged assaults, even when separated by six (Caleb Devlin and Charles Hollis) or nine (Douglas Zack) years, is admissible because it demonstrates the ongoing nature of the defendant's behavior. Cf. *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. at 761.

Finally, the defendant argues that the trial judge erred in not weighing the probative value of the evidence against its prejudicial effect, as he must when the evidence of uncharged acts is probative of the charged offense. *Commonwealth* v. *Fleury-Ehrhart*, 20 Mass. App. Ct. at 430-431. The decision is left squarely within the trial judge's discretion. *Ibid.* Before admitting the evidence of uncharged assaults on other victims the trial judge here held a hearing and issued a written explanation of his reasons for admitting the testimony. He also gave careful limiting instructions to the jury before such evidence was admitted and during his final charge as to how they could and could not consider the evidence. Given the care with which the judge treated the evidence, we see no abuse of discretion in

---

[7]In *Yetz*, the uncharged conduct was in the context of a long-term and in some sense apparently consensual relationship that began when the victim was eleven and ended when she was sixteen, while the charged offense was forced and unwanted. *Commonwealth* v. *Yetz*, 37 Mass. App. Ct. 970, 971 (1995).

the trial judge's conclusion that the evidence was not unduly prejudicial.

7. *Jury instructions.* At all appropriate times, the defendant objected to the testimony of Caleb and Martin Devlin, Charles Hollis, and Douglas Zack. The trial judge overruled each objection, but gave a limiting instruction to the jury as each witness testified and at the close of the evidence.[8] The defendant claims that (1) the limiting instruction was insufficient to cure the

---

[8]Before each of the four men testified regarding the uncharged acts the judge instructed the jury on how they could and could not consider the evidence using essentially the same language each time. Before Caleb Devlin testified, the judge instructed the jury as follows:

"I want to underscore for you the fact that the defendant is not charged with committing any crime other than the four crimes specified in these indictments that will be submitted to you at the end of this case for your verdict. As you hear mention of any other acts allegedly done by the defendant, you may not take these as a substitute for proof that the defendant committed the crimes charged. Nor may you consider this testimony as proof that the defendant has a criminal personality or a bad character or is a person who has an inclination towards criminal conduct. You cannot consider these things in that light. You may consider testimony of acts involving other children on the issue of the Commonwealth's theory that the defendant raped and assaulted Ward Devlin as part of a common scheme or plan. It could be, you may find, a plan to exploit the Devlin family's trust and dependence by Father Hanlon as a representative of the church to which they were devoted.

"You may also consider whether this testimony corroborates the testimony of Ward Devlin and shows a common scheme and pattern of behavior, modus operandi, if you will. You may not consider this evidence for any other purpose. Specifically you may not use it to conclude that if you determine the defendant committed acts with other children, it must inevitably follow that he committed acts with Ward Devlin."

Before Douglas Zack testified, the judge gave the same limiting instruction, but expanded it to include the Hollis and Zack families, in addition to the Devlin family. He told the jury that they could consider the evidence on the issue of whether the defendant engaged in a common scheme or course of conduct to "exploit the Devlin . . . Hollis . . . and Zack famil[ies]' trust and dependence on Father Hanlon as a representative of the church to which they were devoted."

The judge altered the instructions during his final instructions to the jury. Instead of referring to a "plan to exploit the . . . famil[ies'] trust and dependence on Father Hanlon," he told the jury that they could consider the testimony of the four men on the issue of "whether those acts demonstrate the defendant's motive or intent with Ward Devlin or demonstrate a common scheme or plan on the part of the defendant to sexually abuse young men that

prejudicial impact of the improperly admitted evidence; and (2) the trial judge erred by expanding the purpose for which the jury could consider the evidence in his final charge to the jury.

Given the potentially prejudicial effect of evidence of uncharged bad acts, a trial judge should exercise caution in instructing the jury as to how that evidence may be used. See *Commonwealth* v. *Jackson*, 384 Mass. 572, 579 (1981). Jurors are expected to follow the judge's instructions, *Commonwealth* v. *Helfant*, 398 Mass. at 228, and a proper limiting instruction "usually renders any error in the introduction of prejudicial evidence harmless." *Commonwealth* v. *Jackson*, 384 Mass. at 579. Here, the evidence of uncharged sexual assaults was properly admitted, and the judge gave specific limiting instructions to the jurors before each witness testified about the uncharged assaults, and again in his final instructions. Since the evidence was properly admitted, we presume that the judge's limiting instruction was sufficient to cure any undue prejudice.

The defendant's second contention is that the trial judge improperly changed the purpose for which the jury could consider the evidence in his final charge to the jury, allowing the jury to consider the evidence for the purpose of demonstrating the defendant's propensity to commit the crime charged. In his final charge, the judge told the jury they could consider the evidence of the uncharged acts on the issue of whether the acts "demonstrate the defendant's motive or intent with Ward Devlin or demonstrate a common scheme or plan on the part of the defendant to sexually abuse young men that he came into contact with in his capacity as a priest at St. Mary's and at St. Paul's Church." In a conclusory manner, citing no authority on this point, the defendant now claims that the trial judge impermissibly expanded the limiting instructions in his final charge, thereby allowing the jury to consider the evidence for propensity purposes.

When reviewing a jury instruction, we look at the instruction within the context of the entire jury charge. *Commonwealth* v. *Drumgold*, 423 Mass. 230, 256 (1996). A jury charge is not invalidated by one statement which may be less than ideal when the instructions, viewed in their entirety, do not mislead the jury. *Commonwealth* v. *Cundriff*, 382 Mass. 137, 152-153 (1980), cert. denied, 451 U.S. 973 (1981). Here, during the

he came into contact with in his capacity as a priest at St. Mary's and at St. Paul's Church."

course of the trial and in his final charge, the judge gave the jury the proper instruction as to how they could consider the challenged evidence. The judge never failed to caution the jury that they could not consider the evidence to demonstrate the defendant's bad character or propensity. Even if it were error to expand the instruction, it could not have misled the jury into believing that the evidence was admissible to show the defendant's bad character. We see no error in the trial judge's alteration of the precise words which he had previously repeated several times to the jury.

8. *Rule of completeness.* The defendant did not testify at the second trial, but portions of his testimony from the first trial were read by the investigating State trooper. The testimony was referred to throughout as a typed statement of the defendant's and was never identified as trial testimony. The defendant, who requested that the whole of the transcript of his testimony be admitted, contends that the trial judge erred in allowing in some but not all of the defendant's prior testimony. The defendant further contends that allowing this incomplete testimony drew attention to the fact that the defendant did not testify.

The rule of completeness, as discussed in *Commonwealth* v. *Watson*, 377 Mass. 814 (1979), is a limited rule. When a defendant's statement is put in evidence to show his guilt, he has the right to offer any other part of the same statement which tends to explain the admission. He may not introduce portions of the statement that are unrelated to the admission. *Id.* at 832. Even in the interests of "completeness," a defendant does not have the right to introduce unrelated, self-serving statements. *Commonwealth* v. *Henry*, 37 Mass. App. Ct. 429, 432 (1994).

The defendant does not point to specific portions of his prior testimony that should have been admitted as relating to and explaining the sections in fact read. At trial, the defendant asked that the State trooper read the entire testimony or none of the testimony at all. In response to the defendant's objections, the prosecutor agreed to have the State trooper read the sections of the defendant's testimony where the defendant denied ever sexually assaulting Ward Devlin.

Allowing the State trooper to read portions of the prior testimony did not call undue attention to the defendant's failure to testify. As already discussed, the State trooper testified that he was reading from a typed statement of the defendant and gave no indication that it was a transcript of the defendant's

testimony at his first trial. There was no error in admitting only part of the defendant's testimony.

9. *Sentencing considerations.* The defendant contends that the trial court's imposition of three concurrent life sentences was an impermissibly severe sentence which failed to take into consideration his age, lack of a prior record, and other circumstances relating to the offenses. He further contends that the length of the sentence was a punishment for exercising his right to a trial.

The trial judge has great latitude in sentencing, provided the sentence does not exceed the statutory limits. *Commonwealth* v. *O'Connor*, 407 Mass. 663, 674 (1990). Both G. L. c. 265, § 22A, rape of a child with force, and G. L. c. 265, § 24B, assault with intent to rape a child, carry a statutory maximum penalty of life in prison.

The defendant's claim that the sentence imposed was a punishment for exercising his right to trial is not supported by reference to authorities, as required by Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975). We therefore do not pass upon it.

*Judgments affirmed.*