NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-341

COMMONWEALTH

vs.

JORGE A. CASTILLO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant, Jorge A. Castillo, was convicted of five counts of indecent assault and battery on a child under fourteen, in violation of G. L. c. 265, § 13B, and intimidation of a witness, in violation of G. L. c. 268, § 13B.[1] On appeal, the defendant claims that the judge abused his discretion by permitting the victim to testify that the defendant had abused her on multiple

---

[1] The defendant was acquitted on one additional charge of indecent assault and battery on a child under fourteen. The defendant was also charged with two counts of aggravated rape and abuse of a child, in violation of G. L. c. 265, § 23A (a), and one count of open and gross behavior in violation of G. L. c. 272, § 16. The jury could not reach a verdict as to those charges, and the judge declared a mistrial as to each of them. After the defendant was convicted and sentenced, the Commonwealth filed a nolle prosequi as to those charges.

prior occasions, and that the prosecutor's closing argument exceeded the bounds of proper argument.  We affirm.

Background.  We summarize the facts the jury could have found and reserve certain details for later discussion.  From 2013 to 2015, the defendant's girlfriend babysat for her aunt's children, the two victims whom we shall call J.S. and C.S., once or twice a week at the home she shared with the defendant.  J.S. was between ten and twelve years old during this time, and C.S. was between eleven and thirteen.

On one occasion, J.S. was at the defendant's home when she came in from playing outside to get something from the kitchen.  While she stood at the refrigerator, the defendant came up from behind her and touched her vaginal area over her clothing.  J.S. said she should go back outside, and the defendant told her not to tell anyone in her family.  J.S. agreed and walked out.  On three other occasions, the defendant sexually assaulted J.S. when they were alone in the master bedroom of the home.  Once, the defendant touched J.S.'s breasts while forcing his penis into her mouth while she sat on a "baby bed."  On another occasion, the defendant sat down on his bed and put his penis in J.S.'s mouth.  And another time, J.S. stood next to the defendant as he made her touch his penis before he masturbated next to her.  Each time J.S. left the bedroom, the defendant told her not to tell anyone in her family.

2

During the same time period, J.S. accompanied the defendant when he drove to pick up his son from soccer practice. On the way, the defendant pulled the car into a parking lot, parked, and, while she sat in the passenger seat, touched J.S.'s vagina and forced her to touch his penis. Again, the defendant told J.S. not to tell anyone.

At some point, J.S. told her younger sister, C.S., how the defendant had touched her, and the two agreed that they would not leave each other alone with the defendant going forward.[2] A few years later, when she was fifteen, J.S. told her mother and father and asked them not to inform the police about the abuse, and they agreed not to do so.

Two years later, when J.S. was seventeen, she reported the abuse to the police herself. This disclosure followed a party at J.S.'s parents' home, where a guest's dog bit the defendant's daughter. The defendant was not at the party, but after learning what happened, he drove to J.S.'s parents' home and told them that he was going to call the police. An argument ensued, and as noted, J.S. told the police about the defendant's conduct. Thereafter, the defendant consented to an interview

---

[2] C.S. also testified that while she was alone with the defendant in the living room of the home, the defendant touched her breasts. For this incident, the defendant was charged with indecent assault and battery on a child under fourteen, in violation of G. L. c. 265 § 13B, but the jury found him not guilty. See note 1, supra.

3

which occurred at the Amherst police department.  The defendant denied any wrongdoing but acknowledged that he would play outside with J.S. and C.S., and "grab" or "spin" them.

Discussion.  1.  Uncharged prior bad acts.  The defendant contends that the judge abused his discretion by allowing the Commonwealth to solicit testimony from J.S. that the defendant sexually assaulted her on several other occasions.  We are not persuaded that the evidence at issue unduly prejudiced the defendant and further conclude that the testimony did not, as the defendant claims, amount to improper character evidence.

Prior to trial, the prosecutor filed a motion in limine seeking to introduce testimony that the defendant sexually assaulted J.S. on fifteen to twenty additional occasions.  The defendant opposed the motion, and, after a hearing, the judge initially reserved ruling pending the start of trial, at which time, he allowed the Commonwealth's motion to admit J.S.'s testimony.  He reasoned that since the uncharged acts were not too remote in time and were between the same parties, the evidence was relevant to show the defendant's intent and the relationship between the parties.  The defense requested, and the judge gave, instructions limiting the jury's consideration of this evidence both at the time J.S. testified about the prior acts of sexual abuse and in the judge's final instructions to the jury.

4

"It is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved . . . for the purposes of showing his bad character or propensity to commit the crime charged" (citation omitted).  Commonwealth v. Morgan, 460 Mass. 277, 289 (2011).  See Mass. G. Evid. § 404(b) (2021).  However, the prosecution may introduce that same evidence for other valid reasons, including to show intent or the relationship between the parties, so long as its probative value is not outweighed by the danger of unfair prejudice.  See Commonwealth v. Hanlon, 44 Mass. App. Ct. 810, 817 (1998).

The defendant argues that J.S.'s testimony was marginally probative as it did not have "specifics attached to it."  This argument is not availing.  Trial judges are encouraged to limit prior bad act testimony to establishing in "summary fashion" any uncharged evidence of abuse.  Commonwealth v. Dwyer, 448 Mass. 122, 130 (2006).  In addition, "[t]he case law is particularly clear that evidence of uncharged sexual misconduct, when not too remote in time, 'is competent to prove an inclination to commit the [acts] charged . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue.'"  Hanlon, Mass. App. Ct. at 817, quoting Commonwealth v. King, 387 Mass. 464, 470 (1982).  Here, the evidence was particularly relevant on the question of the defendant's intent in light of the defendant's statements to police that any physical contact

5

with J.S. was incidental to him playing with, or "spin[ning]," J.S. outside.

The defendant also claims that, even if the testimony was relevant, its probative value was outweighed by its potential for prejudice.  We disagree.  "Evidence is unfairly prejudicial only if it has an undue tendency to suggest decision on an improper basis . . . [including] an emotional one." Commonwealth v. Foreman, 101 Mass. App. Ct. 398, 403 (2022) (quotation and citation omitted).  Here, the judge gave a limiting instruction after J.S.'s testimony and again at the close of trial, "thereby minimizing any prejudicial effect."[3] Commonwealth v. Forte, 469 Mass. 469, 480 (2014).  In addition, the jury was unable to reach a verdict on three separate offenses and "acquitted the defendant of [one] offense[], 'demonstrat[ing] a careful consideration of the evidence.'" Foreman, supra, quoting Commonwealth v. Dorazio, 472 Mass. 535, 543 (2015).  Given these circumstances, we conclude that the probative value of J.S.'s testimony was not outweighed by any prejudicial effect.

2.  The prosecutor's closing argument.  Next, the defendant contends that the prosecutor's description of the home where the

_____

[3] "We presume that the jury followed the judge's instructions."  Commonwealth v. Henley, 488 Mass. 95, 125 (2021).

6

defendant sexually assaulted J.S. as a "house of horrors," was improper and "undeniabl[y] . . . impact[ed] the jury's verdict."

Because the defendant did not object at trial, we review to determine whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. Desiderio, 491 Mass. 809, 815 (2023). The standard calls for "us to determine 'if we have a serious doubt whether the result of the trial might have been different had the error not been made'" (citation omitted).[4] Id. at 815-816. Taken in context, the comment at issue amounted to a permissible comment about the extent to which the defendant's sexual abuse impacted the time J.S. was at the home. See Commonwealth v. Phillips, 495 Mass. 491, 499 (2025) ("describing the shooting as a 'monstrous crime' did not cross the line between fair and improper argument"); Commonwealth v. Alemany, 488 Mass. 499, 512 (2021) (description of alleged crimes as "part of a 'horror story'" not improper). The jury heard evidence of the defendant sexually assaulting J.S. and C.S. in his home over the course of two years. Describing that home as a "house of horrors" was inherent to "'the odious . . . nature of the crime[s]' [themselves]." Phillips, supra, quoting Commonwealth v. Lyons, 426 Mass. 466,

---

[4] We also note that the absence of an objection from trial counsel is some indication that, in context, the prosecutor's words were more innocuous than now argued. See Commonwealth v. Mello, 420 Mass. 375, 380 (1995).

472 (1998).  Moreover, the judge instructed the jurors twice that closing arguments are not evidence, mitigating the risk of any prejudice to the defendant.  See Commonwealth v. Santana, 477 Mass. 610, 628 (2017).  While the comment was better left unsaid, we are not persuaded it goes beyond "tolerable hyperbole."[5]  Commonwealth v. Pearce, 427 Mass. 642, 645 (1998), quoting Commonwealth v. Hartford, 425 Mass. 378, 381 (1997).

Judgments affirmed.

By the Court (Vuono,
Desmond & Toone, JJ.[6]),

*Paul Little*

Clerk

Entered:  November 20, 2025.

---

[5] We have long warned the Commonwealth and its prosecutors to abide by their "stricter standard of conduct" when making closing arguments.  Commonwealth v. Kozec, 399 Mass. 514, 519 (1987).  We do not condone the prosecutor's comment.  We hold only that it did not create a substantial risk of a miscarriage of justice.

[6] The panelists are listed in order of seniority.