COMMONWEALTH *vs.* JAMES FERRARO
(and twelve companion cases).

Suffolk. December 3, 1996. - January 10, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal,* Trial of indictments together. *Evidence,* Prior misconduct.

In a criminal case, joinder of indictments charging the defendant with sexual assaults of seven young boys was warranted where, as matter of law, the similarity of the attacks made them related offenses under Mass. R. Crim. P. 9, and where the defendant did not show that prejudice would result from joinder which would warrant separate trials. [89-91]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 1, 1995.

The case was reported by *O'Connor,* J.

*Richard H. Gens* for the defendant.

*Varsha Kukafka,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. A single justice has stayed the proceedings and reserved and reported the question whether it was error for a motion judge to deny the Commonwealth's motion for joinder of indictments charging the defendant with sexual assaults on seven young boys. The Commonwealth asserts that its evidence "in its totality shows a common scheme and a pattern of operation that tends to prove all the indictments." *Commonwealth* v. *Feijoo,* 419 Mass. 486, 494-495 (1995). The Commonwealth argues that joinder is mandated because its "evidence would [be] admissible at all the trials if each indictment had been tried separately . . . to show that each incident occurred pursuant to an ongoing plan." *Id.* at 495. The Commonwealth also argues that it was error of law for the judge not to have joined the trial of all the indictments. We agree. We remand the case to the county court for the entry of a

judgment vacating the denial of the Commonwealth's motion for joinder.

A grand jury indicted the defendant, James Ferraro, on sexual assaults on seven boys, six of which assaults occurred in Randolph, and one in the nearby city of Quincy. All the attacks took place within a four-mile radius of the defendant's home. Each occurred near the defendant's victim's home and near a place that the defendant was known to frequent.[1] All the attacks involved an assailant in a hooded sweatshirt and a bandanna or mask of some kind who knocked down the boy, asked about money, and then committed a sexual assault.

Five of the boys received multiple telephone calls from the assailant following the attacks.[2] All but one of these five received telephone calls on or about the first anniversary of the attack.[3] One boy (Doe) received a telephone call from his assailant one to two months after the attack and each year thereafter on or near the date of the assault.[4] These telephone calls continued even after Doe's family made its telephone number unpublished and moved to Hanover.

One telephone call to Doe was traced to the office of the school where the defendant worked as a day janitor. The night janitor saw the defendant alone in the office on the night when the telephone call was made. The defendant was arrested. When he was arrested, two bandannas and a black, hooded sweatshirt, zipped up the front, were found in his vehicle. On being questioned by the police, the defendant said that he had been a victim of a sexual assault as a young boy. He stated that he had been on his way home from a religion class at Saint Bernadette's hall when an assailant forced him to the ground, asked him if he had any money, threatened to stab him, fondled his penis and buttocks, and performed oral

[1] For example, the attack in Quincy took place less than one-half mile from the Metropolitan District Commission skating rink where the defendant was known to skate.

[2] One of the cases not joined by the trial judge concerned a victim receiving such telephone calls.

[3] At various points, the attacker would mention other boys, and on one occasion claimed to be one of the other boys. The name of the boy who was not called near the first anniversary of his attack was mentioned during a telephone call to another boy. This fact links this boy with the others.

[4] The telephone caller knew facts about the incident that only the victim, his family, and the attacker knew. Furthermore, Doe recognized the voice as that of his attacker.

sex on him.[5] The defendant also mentioned that his assailant telephoned him after the assault to remind him of the incident.

Prior to the trial, the Commonwealth moved for joinder of all the indictments.[6] The motion judge determined that five of the assaults were similar enough to merit joinder, but that two should not be joined. She cited the geographic dissimilarity as the reason for not permitting joinder but did not mention or place any weight on multiple telephone calls made to five boys. The motion judge did not focus on the other similarities. See note 7, *infra.*

Telephone calls made to victims after attacks have been noted by an Appeals Court in Texas to "evidence a peculiar diligence in locating . . . names and telephone numbers [of victims] and a peculiar persistence of interest in them which rises to the level of signature status." *Lang* v. *State,* 698 S.W.2d 735, 737 (Tex. Ct. App. 1985). Four victims in the case at bar who received calls, including Doe, were asked by their caller, "Remember me?" or "Don't you remember me?" These telephone calls are indicative of a modus operandi[7] in light of the other factors linking the crimes.[8] It was error to ignore the telephone calls and other similarities and focus solely on the geographic area.

Where, as here, there is a consistent modus operandi or a

---

[5]The place where the defendant was assaulted as a child is significant because a number of the incidents at issue here occurred as the children were returning home after religion class at St. Bernadette's hall.

[6]The rules of criminal procedure in Massachusetts allow joinder of "[r]elated [o]ffenses," which are those that, inter alia, "arise out of a course of criminal conduct or series of criminal episodes connected together." Mass. R. Crim. P. 9 (a) (1), 378 Mass. 859 (1979). In the event that offenses are related, "[t]he trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice." Mass. R. Crim. P. 9 (a) (3), 378 Mass. 859 (1979).

[7]"Modus operandi" "refers to [a] pattern of criminal behavior so distinct that separate crimes or wrongful conduct are recognized as work of [the] same person." Black's Law Dictionary 1004 (6th ed. 1990).

[8]All the assaults took place within a four-mile radius of the defendant's home. All of the victims were attacked near their homes and near places where the defendant was known to frequent. All of the victims were assaulted by a man wearing a hooded sweatshirt and bandanna or mask. The assailant would ask the victims about money and then sexually assault them. These facts are indicative of a "modus operandi." See *Commonwealth* v. *Feijoo,* 419 Mass. 486, 494-495 (1995).

"uniqueness of technique, a distinctiveness, or a particularly distinguishing pattern of conduct common to the current and former incidents . . . the admission of evidence of prior bad acts as tending to prove that the defendant was the person who committed the crime charged" is permissible to prove the identity of a defendant. *Commonwealth* v. *Brusgulis*, 406 Mass. 501, 506 (1990). See *Commonwealth* v. *Jackson*, 417 Mass. 830, 834-838 (1994) (allowing evidence of prior bad act in a subsequent case for the sole purpose of identification of the defendant based on a distinctive modus operandi); *Commonwealth* v. *King*, 387 Mass. 464, 472 (1982). See also *Commonwealth* v. *Larkins*, 302 Pa. Super. 528, 533-534 (1982) (joinder proper in cases within a three-mile radius where a distinctive modus operandi used).

Our analysis is supported by the Federal rule governing joinder, after which our rule 9 is modeled. Reporters' Notes to Mass. R. Crim. P. 9, Mass. Ann. Laws, Rules of Criminal Procedure at 132 (Law. Coop. 1979). Rule 8 (a) of the Federal Rules of Criminal Procedure allows joinder of "[t]wo or more offenses . . . in the same indictment or information in a separate count for each offense if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." See *United States* v. *Gray*, 958 F.2d 9, 14 (1st Cir. 1992) (joinder proper where defendant being tried for same charges in crimes involving similar victims and similar modus operandi).

Where joinder is sought, the defendant bears the burden to show that prejudice will result from joinder. *Commonwealth* v. *Gallison*, 383 Mass. 659, 671 (1981). The defendant argues that joining the cases will be prejudicial because "totally coincidental facts will be used to inject speculation and surmise into the minds of the jury." We do not agree. Whether the facts are coincidental, a pattern of conduct, or a modus operandi that links these cases together is a question for the jury.

Under Mass. R. Crim. P. 9, which governs joinder, a defendant "must point to definite prejudice that presently exists" and not merely to "potential dangers." Reporters' Notes to Mass. R. Crim. P. 9, at 135. The burden of showing prejudice is not satisfied "by a showing merely that the defendant's

chances for acquittal would have been better had the . . . indictments been tried separately." *Commonwealth* v. *Montanez,* 410 Mass. 290, 304 (1991). The defendant has not shown that there will be prejudice that warrants separate trials for the various assaults.

We conclude that, as a matter of law, the similarity of the attacks make them "related offenses" and that they should have been joined. The matter is remanded to the single justice session where an order will enter vacating the denial of the Commonwealth's motion for joinder.

*So ordered.*