## Commonwealth *vs.* Steven D. Jacobs.

No. 99-P-556.

Bristol. December 7, 2000. - July 10, 2001.

Present: Armstrong, C.J., Kaplan, & Greenberg, JJ.

*Practice, Criminal,* Trial of complaints together.

At the trial of two complaints charging the defendant chiropractor with indecent assault and battery upon two adult women, the judge erred in ordering these alleged offenses to be tried jointly where the offenses, occurring more than three years apart, were not based on the same conduct or episode and, thus, were unrelated [40-41]; where there was no "single scheme or plan," absent the required nexus and cohesion of repeated incidents [41-43]; where, contrary to the Commonwealth's contention that, since cross-admission of bad acts could occur in separate trials to show a pattern of behavior, a joint trial would be permissible, cross-admission would not be allowed absent a common plan or pattern [43-45]; and where the bare similarity of the two offenses being the same "in their nature or character" did not justify joinder [45-46].

In the circumstances of a criminal trial in which the judge erred in joining two offenses, the error was not harmless and the judgments of conviction were reversed for separate trials. [46-49]

Complaints received and sworn to in the Attleboro Division of the District Court Department on April 11, 1997, and May 21, 1997, respectively.

The cases were heard by *Gregory L. Phillips*, J.

*Edward J. Fallman* for the defendant.

. *Sharon L. Sullivan-Puccini*, Assistant District Attorney, for the Commonwealth.

Kaplan, J. Steven Jacobs was tried jury waived in District Court and convicted on two complaints charging him with indecent assault and battery upon two adult women, Melissa

Gray in one complaint and Susan Hudson in the other.[1] There was error in ordering these alleged offenses to be tried jointly; they were unrelated in the sense of the rule regulating joinder, Mass.R.Crim.P. 9, 378 Mass. 859 (1979). Accordingly, the convictions will be reversed for separate trials.[2]

The defendant had been a licensed chiropractor since 1988. Gray was his patient during November, 1996, and accused him of impermissible behavior in massaging her buttocks. This was complaint 9734 CR 1441. Upon seeing newspaper reports of the defendant's arraignment on the Gray complaint, Hudson complained to the police, who lodged complaint 9734 CR 2004. She accused the defendant of misbehavior in touching her breast tissue when she was his patient more than three years earlier, in July, 1993.[3]

At the call of the trial calendar on December 14, 1998, the Commonwealth presented a motion for joint trial of the complaints. Trying to fit the alleged offenses into the "related" category of the joinder rule, Mass.R.Crim.P. 9(a)(1),[4] the Commonwealth contended the offenses could be viewed as part of a single scheme or plan, a suggestion fortified, according to the Commonwealth, by its supposition that, if the complaints were tried separately, the evidence at one trial would be used at the trial of the other to show a pattern of behavior.[5] Alternatively, the Commonwealth contended in its motion the offenses might qualify as being based on the "same criminal conduct." Oppos-

---

[1]Jacobs was sentenced to one year in a house of correction, suspended, with two years' probation, and mandatory registration with the sex offender registry. The Board of Registration of Chiropractors later suspended Jacobs's license to practice.

[2]The appeal from the convictions was consolidated with an appeal from the denial of the defendant's postconviction motion for a new trial. In view of our disposition of the direct appeal we do not consider the collateral appeal.

[3]At the close of the evidence, three counts remained of the Gray complaint and two of the Hudson complaint and on these the defendant was found guilty.

[4]"(a) Joinder of Offenses. (1) *Related Offenses.* Two or more offenses are related offenses if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan."

[5]The Commonwealth also spoke of the evidence as possibly demonstrative of the defendant's intent, but the point did not figure at trial and the Commonwealth does not present substantive argument about it on the appeal.

ing the motion, the defendant argued the offenses were "unrelated" under (a)(4) of the rule,[6] as indicated by the lapse of three years and four months between the alleged acts, and by the absence of any nexus between the two incidents.[7]

The trial judge allowed the motion without comment and went on without pause to try the complaints together. (Evidence adduced at trial is sketched at point 5, *infra*.)

This opinion considers the text and framework of the joinder rule. Then it takes up the Commonwealth's contentions above-mentioned. Finally, it considers whether error in allowing joinder could be materially harmful to the defendant.

1. *Joinder rule.* It is only "related offenses," as set out in (a)(1) of the rule, that may be joined for trial, namely, those which are "[*first*] based on the same criminal conduct or episode or [*second*] arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." "Conduct" translates, in the more colloquial language of the Reporter's Notes (par. 3) to the rule, as "an act or omission to act," and "episode" as "an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series." The offenses charged herein were not based on the same conduct or episode thus described, rather they were based on distinct acts or omissions or occurrences. The separateness was apparent from the empty time of more than three years that intervened between the chiropractic treatments of the two individuals. The lapse of time also repelled any idea that there was a single course of conduct or a connected series of episodes or parts of a single scheme.

The alleged offenses were "unrelated" and joinder in such

---

[6]"(a) Joinder of Offenses. . . . (4) *Joinder of Unrelated Offenses.* Upon the written motion of a defendant, or with his written consent, the trial judge may join for trial two or more charges of unrelated offenses upon a showing that failure to try the charges together would constitute harassment or unduly consume the time or resources of the parties. The trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice."

[7]The Commonwealth's motion and the opposition were in writing, but the Commonwealth did not file a supporting affidavit, see Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979), nor did the defendant file an affidavit opposed.

cases is not only unauthorized but gravely discountenanced. The Reporter says (par. 5): "Rule 9 takes the position that the goal of judicial economy will rarely be paramount to affording the defendant a trial as free from prejudice as possible; therefore, joinder of unrelated offenses is prohibited except at the instance of the defendant or with his written consent." This consent procedure is provided for at (a)(4) (text at note 6, *supra*).

2. "*Single scheme or plan.*" Of course we recognize the words of the rule are not immaculately precise, and the same can be said of the explanatory language of the Reporter's Notes. The imprecision lets in room for some residual discretion in the interpretation and application of the rule. See *Commonwealth* v. *Wilson*, 427 Mass. 336, 345 (1998). In our view, however, no reasonable exercise of discretion could hoist the present offenses out of the "unrelated" and into the "related" category.

Arguing that the present situation exhibits a "single scheme or plan" in the sense of the rule, the Commonwealth cites, as purportedly comparable, three cases where joinder for trial was allowed. These cases are very materially different from the present; in each cited case the incidents joined for trial have a "temporal and schematic nexus," *Commonwealth* v. *Gallison*, 383 Mass. 659, 673 (1981), which is notably lacking in the case at bar.

In *Commonwealth* v. *Mamay*, 407 Mass. 412, 416-417 (1990), the defendant doctor was charged by nine indictments with gross sexual offenses — indecent assault and battery and rape — against six female patients. On motion the Commonwealth was allowed to join for trial six of the nine indictments, involving five victims treated by the defendant within a period of eight months. Alone with the woman in an examination room, the defendant asked her about her sexual practices and committed overt, unwanted sexual acts upon her,[8] accompanied by explicit lascivious language. The court discounted some slight variations among the incidents and stressed the "similarity in

[8]Reserved for separate trial was a sexual offense against the defendant's own daughter, two and one-half years old, and a sexual offense against a female patient committed at the patient's house and not part of the pattern of behavior to be disclosed at the joint trial. (Drawn from record appendix in *Mamay* case.)

the *method* by which the defendant committed the various offenses . . ." (emphasis in original). *Id.* at 417. This practice, repeated numerous times, comprised "a clear pattern of conduct." *Ibid.*[9]

The defendant in *Commonwealth* v. *Feijoo*, 419 Mass. 486, 487, 489-490 (1995), a karate instructor, was indicted for rape and other sexual abuse of nine male students in a continual stream of incidents over a period of five years.[10] The defendant's misbehavior was virtually identical in all instances. He led the boys to believe he was a "Ninja," supreme in karate; held out to each boy the prospect of becoming his protege; pressured the boys to "succeed" by overcoming their deepest fears, breaking through a "condition" and choosing to become gay, and thereby engaging in sexual activity with him. Upholding the joinder order, the court said, "[T]he evidence in its totality shows a common scheme and a pattern of operation that tends to prove all the indictments." *Id.* at 494-495.

In *Commonwealth* v. *Ferraro*, 424 Mass. 87, 88-89 (1997), seven boys between eleven and fifteen years of age were molested in evening hours in a discrete location by a man wearing a hooded sweatshirt and a bandanna or mask. He would knock the boy down and ask for money. In each case a sexual assault followed. The assailant phoned at least five of the boys after the respective attacks, using the boy's name; all but one of the five received telephone calls on or about the first anniversary of the attack. The court, approving the joinder, concluded the offenses, taken together, demonstrated a common scheme and pattern of operation. *Id.* at 89-90. In addition, the evidence of pattern was so distinctive that it could help on the contested issue of the identity of the perpetrator. *Ibid.* See *Commonwealth* v. *Gallison*, 383 Mass. at 671-673 (abuse and neglect of

---

[9]For the defendant's questions to the women about their sexual practices with physical advances, including vaginal and anal probings, see *id.* at 413-415.

[10]See *Commonwealth* v. *Hanlon*, 44 Mass. App. Ct. 810, 819 (1998), quoting from *Commonwealth* v. *Helfant*, 398 Mass. 214, 228 & n.13 (1986) ("When . . . uncharged misconduct is 'one instance in a continuing course of related events,' or the conduct is unusual and particularly similar to the charged acts, the allowable time period [for admitting evidence of uncharged acts as not too remote] is greater").

defendant's second child during time frame of first child's death showed common course of conduct and was probative of defendant's state of mind on manslaughter charge).

By comparison with the foregoing decisions our case is seen to be inappropriate for the "single scheme or plan" category: absent in our case is the required nexus and cohesion of repeated incidents. Indeed, our case is even weaker for joinder than *Commonwealth* v. *Sylvester*, 388 Mass. 749, 753-758 (1983). Five indictments charged the defendant with sexual offenses against three boys (fellatio upon them for pay) committed in the privacy of his apartment over a period of eight months. In an instructive decision, the court pointed out that the crimes charged were "independent offenses" ("unrelated" in the sense of the joinder rule), reasoning: "where the defendant simply denied the charges, evidence of the other offenses would not bear on an essential element of [any one] crime"; nor "was there any issue respecting the particular factual circumstances"; no question of identity was presented; none of the three boys "offered direct corroborative evidence of the commission of offenses against the other two." On retrial, the judge was to consider whether undue prejudice might result, requiring severance of the charges. *Id.* at 756-757.[11]

3. *Cross-admissibility of evidence.* In attempted aid of its contention that joinder could be allowed, the Commonwealth suggested that "[t]he evidence at one trial [Hudson] would be used . . . at the other trial [Gray]," meaning the evidence regarding Hudson could come in as "bad acts" in the trial of the Gray complaint if that were separately tried — and the other way round. But if such cross-admission of bad acts could lawfully occur, then — so the Commonwealth argued — there would be little difference of substance between two separate trials, on the one hand, and a joint trial, on the other, and so joint trial might as well be permitted.

The Commonwealth's assumption about the cross-admissibility of the bad acts in the hypothesized separate trials

---

[11]See *Commonwealth* v. *Hoppin*, 387 Mass. 25, 33-34 (1982). See also *Commonwealth* v. *Blow*, 362 Mass. 106, 200 (1972) (before adoption of rule 9).

is incorrect. True, bad acts have been admitted with considerable (and sometimes perhaps undue) liberality in recent years, but cross-admission here would go well beyond any permitted boundary. The time interval, lack of connectedness, and absence of any markedly distinctive method of operation would speak as strongly against the admission of bad acts as they do against the allowance of joinder of the offenses for trial under the rule. For the criteria that would apply in ruling on the admission of bad acts at separate trial are in general similar to those that apply in ruling on the initial joinder of offenses. The general equation of the relevant considerations appears in the *Sylvester* case, 388 Mass. at 755-758, and likewise in *Mamay*, 407 Mass. at 417, where joinder was upheld.[12]

In the margin we cite illustrative situations where uncharged behavior has been refused admission because it lacked adequate connection with the acts charged as criminal; to admit bad acts in such situations — and similarly in the separate actions here supposed — would be to use them for the prohibited purpose of proving the defendant had a "propensity" to commit crimes.[13] The Commonwealth does not meet the line of authorities but

---

[12]We add that even a ruling in a given case that material evidence is cross-admissible does not establish joinder: it serves only a supportive role in the residual inquiry under rule 9(a)(3) and (d)(1) whether joinder is in the "best interests of justice." See *Commonwealth* v. *Sylvester*, 388 Mass. at 757-758; *Commonwealth* v. *Mamay*, 407 Mass. at 417.

[13]See *Commonwealth* v. *Stone*, 321 Mass. 471, 474 (1947) ("independent transaction" not shown to be "similar in design or plan" to the charged offense of larceny; only common element in the two incidents, a year apart, was that both related to dishonest sale of radio tubes); *Commonwealth* v. *Welcome*, 348 Mass. 68, 70 (1964) ("evidence of a distinct crime unconnected with that for which the defendant is indicted cannot be received"); *Commonwealth* v. *Yetz*, 37 Mass. App. Ct. 970, 971 (1995) (two-year hiatus between incidents of defendant's sexual abuse of complainant and of complainant's aunt; forms of conduct "not alike"; prior misconduct against aunt did not "bear the 'temporal and schematic nexus' necessary . . . to demonstrate a common course of conduct or the defendant's state of mind at the time of the alleged sexual abuse of the complainant"); *Commonwealth* v. *McClendon*, 39 Mass. App. Ct. 122, 130-131 (1995) (theory that accused's bad act of attempted strangulation of stepmother was similar to or linked with charged murder of his male companion not adequately developed beyond evidence accused drank before both incidents and both supposedly were unprovoked). See also the recent case *Commonwealth* v. *Gollman*, 51 Mass. App. Ct. 842, 843-847 (2001).

refers to two cases in our court. Both admitted "bad acts" in evidence but these were much more indicative of a common plan or pattern than anything in the present case.[14]

4. *"Same criminal conduct."* The Commonwealth's joinder motion suggested that the offenses could be viewed as based on the "same criminal conduct" mentioned in rule 9(a)(1) in the sense that they were the same *in their nature or character* (apart from any considerations of timing or interconnection). That such bare similarity[15] would not justify joinder is sharply shown when we examine the cognate Federal rule, Fed.R.Crim.P. 8 (with companion rule 13), which was looked to in the formulation of our local rule. See Reporter's Notes (par. 1) to Mass.R.Crim.P. 9; Smith, Criminal Practice and Procedure § 1036 (2d ed. 1983). Federal rule 8, together with rule 13, expressly authorizes joinder where the "offenses charged . . . are *of the same or similar character* or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." The italicized clause does not appear in our rule 9(a)(1)[16]; otherwise the rules

---

[14]In *Commonwealth* v. *Fleury-Ehrhart*, 20 Mass. App. Ct. 429, 430-432 (1985), two prior female patients of the defendant gynecologist testified that he gave them clitoral massages while they lay on their backs with feet in stirrups — exactly the distinctive abusive treatment described by the complaining witness. (The evidence could be received on the alternate basis that it negated mistake or inadvertence, a basis on which the defendant in that case specifically sought to defend. *Id.* at 431 n.2.) The defendant priest in *Commonwealth* v. *Hanlon*, 44 Mass. App. Ct. 810, 812-813, 818-820 (1998), had been abusing altar boys from his parish over a period of ten years. He systematically invited the boys to the same ski chalet; convinced them by a ruse to sleep naked; claiming he was chilled, entered their beds; and ended by assaulting them sexually. Again distinctive conduct, long repeated, made up a pattern.

[15]The complaints tendered by Gray and Hudson were "similar" in the sense that they arose from scenes of ordinary chiropraxis, but there were differences in the patients' symptoms, designs of treatment, bodily sites of treatment, and milieux (e.g., places and times of appointments with doctor). "Similarity" implies a level of generality and, if the level is set loosely or broadly, loses importance for questions of joinder for trial and of admission of "bad acts." See *Commonwealth* v. *Brusgulis*, 406 Mass. 501, 507 (1990); *United States* v. *Buchanan*, 930 F. Supp. 657, 662 (D. Mass. 1996) (discussing Fed.R.Crim.P. 8).

[16]It appears in subdivision (a)(2) of our rule 9, pertaining to the charging of two or more *related* offenses "of the same or similar character" in one complaint or indictment, a procedure that was not followed here and is irrelevant to the present appeal.

are alike in meaning. Now it is noteworthy that there has been strong objection to the "same or similar character" category in the Federal rule for practical as well as theoretic reasons.[17] In fact, the Federal courts have been quite ginger in their handling of this solecistic clause.[18] Our local rule writers did not adopt the criticized Federal language, and the Commonwealth is not at liberty to install it by main force for purposes of the present case.

5. *Prejudicial joinder.* Where offenses have been *correctly* joined, the burden is on the defendant to show the existence of particular circumstances (whether apparent before trial or manifested during it) that have prejudiced materially his right to a fair trial. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 304 (1991); *Commonwealth* v. *Wilson*, 427 Mass. 336, 346-347 (1998); Mass.R.Crim.P. 9(d)(1). Where, conversely, offenses have been *misjoined*, the trial result cannot stand unless the error could be deemed harmless. Indeed, in *United States* v. *Lane*, 474 U.S. 438, 444-446 (1986), the question raised was whether misjoinder called without more for reversal of a conviction, or could be palliated by a demonstration that it did not harm the defense. The Court took the latter, somewhat milder view. Under *United States* v. *Randazzo*, 80 F.3d 623, 628 (1st Cir. 1996), the burden of demonstrating the harmlessness of misjoinder of of-

---

[17]See 1A Wright, Federal Practice and Procedure § 143, at 37-38 (3d ed. 1999) (joinder on such grounds "poses obvious dangers of prejudice to the defendant"); 25 Moore's Federal Practice § 614.03[2] (3d ed. 2000) ("when the offenses are joined pursuant to the 'same or similar character' portion of Rule 8, prejudice to the defendant is more likely because proof of one crime may tend to corroborate the commission of another"); ABA Standards for Criminal Justice § 2.2(a) (1965) ("Whenever two or more offenses have been joined for trial solely on the ground that they are of same or similar character, the defendant shall have the right to a severance of the offenses"); ABA Standards for Criminal Justice 13-1.2, 13-1.3 & commentary, 13-2.1 commentary, 13-3.1 & commentary (2d ed. 1980 & Supp. 1986); 4 LeFave, Israel & King, Criminal Procedure § 17.1(b), at 597-598 (1999).

[18]Thus the clause is applied, but with the observation that "we are inclined to think" the joinder could qualify under the "common scheme or plan" of the balance of the rule, see *United States* v. *Werner*, 620 F.2d 922, 926-928 (2d Cir. 1980). For an example of limits, self-imposed by the courts, on the application of the clause, see *United States* v. *Halper*, 590 F.2d 422, 430-432 (2d Cir. 1978).

fenses is cast on the prosecution. See *Commonwealth* v. *Rosado*, 428 Mass. 76, 79 (1998) (an error "is not prejudicial only if the Commonwealth can show 'with fair assurance . . . that the judgment was not substantially swayed' by it"); *Commonwealth* v. *Alphas*, 430 Mass. 8, 23 (1999) (Greaney, J., concurring) (Commonwealth "bears the risk of doubt when any exists as to [an] error being nonprejudicial"). But for purposes of the present case it does not matter how, exactly, "harm" or "harmless" is defined, or just how the burden is cast: the misjoinder here appears serious enough to demand reversal for separate trials.[19]

Neither at the allowance of the motion to join nor at any stage of trial did the judge express himself on the question of joinder, and so it is natural and right to assume that he agreed with the Commonwealth's reasoning — and especially with its much stressed point about the cross-admissibility of the evidence. Accordingly, we take it that evidence of one incident came in as "bad acts" to influence improperly judgment about the other incident. It will not do to say that the judge sitting jury-waived should be presumed to have done the right thing and avoided such cross-use of evidence: there is no indication he did so and reason to think he did not (if, indeed, such abnegation would be psychologically possible). "Nor can we draw distinctions between jury and jury waived cases with respect to the application of the rule" that "evidence of a distinct crime unconnected with that for which the defendant is indicted cannot be received." *Commonwealth* v. *Welcome*, 348 Mass. 68, 70, 71 (1964). See *Commonwealth* v. *Gollman*, 51 Mass. App. Ct. 839, 843-844 (2001).

The potential for harm is clear enough, so it is perhaps unnecessary to add that, when we try as best we can to consider

---

[19]Compare Justice Rutledge's famous statement in *Kotteakos* v. *United States*, 328 U.S. 750, 765 (1946): "But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

the record without any prejudicial "seepage" from one case to the other, or any "compounding" or "cumulating" of the two cases, neither case looks strong, and surely not overwhelmingly strong for the Commonwealth.

To begin with, it is accepted that the defendant during his years in practice tended to about two thousand patients, in very substantial total treatment hours, and he had no other such complaint.

Attracted by an advertisement of Merolla Chiropractic, Gray, then twenty years old, married, with no children, attended there complaining of lower back and hip pains. The defendant was employed by Merolla Chiropractic at the time.[20] Gray's first two sessions with the defendant were unremarkable. During the third visit the defendant, according to Gray, carried the massage of her back three-quarters of the way down her buttocks. This, she said, was repeated on a fourth visit; on the fifth, when the defendant asked Gray if the lower massage "felt good," Gray answered "in my shoulders it did," and the defendant promptly stopped that massage. The sixth session was unremarkable. Gray appeared at the office for a seventh treatment by the defendant, but he was gone, discharged by Dr. Merolla after a bitter quarrel between Merolla and the defendant about money matters. When Gray began treatment with Merolla, he evidently confirmed for her that she had a grievance, and he encouraged and assisted her in her complaints to the police and the Board of Registration of Chiropractors.

The defendant, testifying at trial, said he did not go below Gray's waistband in the lower massage; she did not complain to him about any phase of the treatment; and she returned for treatment by him, as noted.

More than three years earlier, Hudson, then twenty-six years old, married, with two children, came to the defendant, then an independent practitioner, after reading his advertisement. Her trouble was whiplash and shoulder injury caused in an automobile accident. The defendant treated her in perhaps

---

[20]The defendant had sold his practice to Merolla and was serving Merolla as an employee.

twelve sessions.[21] He massaged her shoulders and along the sides of her spine; she was lying face down on the table with arms extended to the sides of her head. Hudson said that on two Saturday visits, the third and seventh (the office record, however, indicates there was only one Saturday visit), with the office otherwise closed, the defendant in the course of massage unnecessarily touched the side tissues of her breasts. Hudson did not complain to the defendant at the time, although she spoke to a friend, and she continued treatments with the defendant without any cavil.

The defendant denied touching these places. He has not defended on grounds of accident or inadvertence.

There were expert opinions, in some degree clashing, about the extent of functionally worthwhile massaging in such cases and about permissible techniques of applying it; also about appropriate robing procedures in dealing with female patients.

Considering the less than promising prospects of getting a conviction if the cases were tried independently, the Commonwealth pressed for joint trial. Here the atmosphere would be suffused with intimations of an overarching meretricious scheme of indecent touching on the defendant's part. The Commonwealth's claim to such a forensic advantage was ill-based and its allowance worked unfairly to handicap a defense.

The judgments are reversed and the findings of guilt are set aside.

*So ordered.*

---

[21]The number was disputed, but documentary evidence appears to settle the matter at twelve visits during July, 1993, as against Hudson's statement she did not return for treatment after her "second" Saturday visit.