NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1733                                          Appeals Court

COMMONWEALTH vs. FELIX TORRES.

No. 12-P-1733.

Worcester.      March 7, 2014. - September 10, 2014.

Present: Katzmann, Rubin, & Carhart, JJ.

Rape. Indecent Assault and Battery. Practice, Criminal, Public
    trial, Severance, Trial of indictments together, Mistrial.
    Constitutional Law, Public trial. Evidence, First
    complaint, Prior misconduct, Pattern of conduct, Relevancy
    and materiality, Redirect examination.

Indictments found and returned in the Superior Court
Department on September 12, 2006.

The cases were tried before Bruce R. Henry, J.; a motion
for a new trial, filed on January 21, 2011, was heard by him;
and a motion for reconsideration was considered by him.

Angela G. Lehman for the defendant.
Stephen J. Carley, Assistant District Attorney, for the
Commonwealth.

CARHART, J. The defendant appeals from his convictions of

seven counts of indecent assault and battery on a child and

eight counts of rape of a child, and from the denials of his

motions for a new trial and to reconsider.  The defendant argues
that the trial judge erred in concluding that the court room was
not closed to the public, failing to sever the counts sua
sponte, admitting improper first complaint testimony, and making
various evidentiary rulings.  We affirm.

Background.  The jury were presented with the following
evidence.  The defendant was in an intermittent relationship
with Sonia Nieves.  They had two children together, Kim[1] and
David.[2]  Nieves also had a child from a different relationship,
Sara.[3]  Nieves's three sisters, Nina,[4] Ann,[5] and Beth,[6]
occasionally lived with her and the defendant.  The victims,
Kim, Nina, and Ann, all testified at trial.

Kim testified that the defendant touched her for the first
time when she was seven or eight years old.  He entered her
bedroom while Sara was sleeping in the room and touched Kim's
breast, buttocks, and vagina with his hand.  On another
occasion, the defendant climbed into Kim's bed, again while Sara
was in the room, touched Kim's vagina with his penis, and put

---

[1] A pseudonym.

[2] A pseudonym.

[3] A pseudonym.

[4] A pseudonym.

[5] A pseudonym.

[6] A pseudonym.

his penis inside Kim's mouth.  He was silent during both incidents.

Nina testified that the defendant touched her for the first time when she was eight years old.  On that occasion, he approached Nina while she was doing laundry and put his penis inside her buttocks and vagina.  Then, when Nina was eleven years old, the defendant entered her bedroom and put his penis inside her vagina.  He was silent during both incidents.

Ann testified that the defendant touched her for the first time when she was six or seven years old.  He entered her bedroom while she was playing with her brother and, without saying anything, put his finger inside her vagina.  When she was between ten and fourteen years old, the defendant called Ann into her brother's bedroom at a family barbeque, sucked on her breast, and then performed oral sex on her.  Again, the defendant was silent during the incident.  Ann also testified to three other incidents where the defendant put his fingers inside her vagina while other children were in the room, put his penis inside her vagina while she was sleeping on a couch, and put his penis inside her vagina while she was napping on Nieves's bed. In 2006, after learning that Sara had been abused by her maternal grandfather, the family gathered together to discuss the situation.  At some point, Kim told Ann that she had been abused by the defendant.  This disclosure prompted Nieves, Ann,

Nina, and Beth to meet privately and discuss the defendant. During this meeting, Ann and Nina told the group that they had also been abused by the defendant. The sisters ultimately called the police two times, once regarding their father and once regarding the defendant.

Discussion. 1. Closure. The defendant claims that the trial judge erred in denying his motions for a new trial and to reconsider. After the guilty verdicts, the defendant moved for a new trial, alleging that his right to a public trial was violated because the court room was improperly closed during jury selection and that he was denied the effective assistance of counsel. The judge held a two-day evidentiary hearing, at which two court officers, the defendant's trial counsel, two of the defendant's family members, and the defendant testified. Some of the witnesses testified to the "culture" of jury selection in the Worcester County Superior Court, as well as the seating capacity for jurors in the court room in which the jury were empanelled.

After hearing the evidence, the judge issued a thoughtful decision in which he concluded that, notwithstanding the "culture" in Worcester County to "typically" clear the court room for empanelment, there was also a practice of permitting admittance during empanelment when seats were available. By comparing the seating capacity of the court room with the number

of jurors called during the empanelment process, the judge concluded that the court room was not closed to the public in this case. We also note that the judge discredited the defendant's two family members who claimed that they were excluded. Accordingly, the motion for new trial was denied. The defendant filed a motion to reconsider, which was also denied.

It is well settled that the First and Sixth Amendments to the United States Constitution guarantee criminal defendants the right to a public trial. Commonwealth v. Cohen (No. 1), 456 Mass. 94, 106 (2010) (adding that "[t]he public trial right applies to jury selection proceedings"). A defendant who claims that his right to a public trial has been violated bears the burden of proving that the court room was closed. Id. at 107. Such a violation is a constitutional issue and constitutes structural error. Id. at 105. Accordingly, we "exercise [our] own judgment on the ultimate factual as well as legal conclusions." Ibid., quoting from Commonwealth v. Tucceri, 412 Mass. 401, 409 (1992). After a careful review of the record and the judge's credibility determinations, we cannot say that we disagree with the judge's ultimate factual findings or conclusions. Indeed, the judge's finding, that the court room was not closed to the public, is amply supported by the evidence and reflects a diligent analysis of the circumstances that lay

at the heart of the defendant's claims.  We conclude that the judge did not err in denying the defendant's motions for a new trial and to reconsider.

2.  Joinder.  The defendant next argues that the judge erred in failing to sever the counts sua sponte, pursuant to Mass.R.Crim.P. 9(d), 378 Mass. 860 (1979).  Rule 9 of the Massachusetts Rules of Criminal Procedure, 378 Mass. 859 (1979), governs joinder, and rule 9(a)(1) provides that "[t]wo or more offenses are related offenses if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan."  Rule 9(a)(2) states, "If two or more related offenses are of the same or similar character, they may be charged in the same indictment or complaint, with each offense stated in a separate count."  Finally, rule 9(d)(1) provides, "If it appears that a joinder of offenses or of defendants is not in the best interests of justice, the judge may upon his own motion or the motion of either party order an election of separate trials of counts, grant a severance of defendants, or provide whatever other relief justice may require."  It is against this backdrop that we consider the defendant's claim that the judge erred in failing to sever the counts.

We begin this analysis by noting that a decision to sever counts of an indictment is one left to the "sound discretion of the judge." Commonwealth v. Allison, 434 Mass. 670, 679 (2001). Absent "a clear abuse of discretion," we will not disturb the judge's ruling in this regard. Ibid. The defendant "bears the burden of demonstrating that the offenses were unrelated, and that prejudice from joinder was so compelling that it prevented him from obtaining a fair trial." Commonwealth v. Pillai, 445 Mass. 175, 180 (2005), quoting from Commonwealth v. Gaynor, 445 Mass. 245, 260 (2005). In showing that the offenses are unrelated under rule 9(a), the defendant must show that the offenses lack "factual similarities." Ibid., citing Commonwealth v. Ferraro, 424 Mass. 87, 89-91 (1997). See Commonwealth v. Feijoo, 419 Mass. 486, 494-495 (1995) ("Offenses are related if 'the evidence in its totality shows a common scheme and pattern of operation that tends to prove' each of the complaints"). In showing prejudice, the defendant must prove that he was foreclosed from pursuing a "particular tactic or right" at trial. Commonwealth v. Spray, 467 Mass. 456, 469 (2014).

In this case, we note that the evidence offered in support of each count was similar, if not identical. Although the incidents occurred over many years, there was overlap among the incidents, which took place in similar locations and in

factually similar ways.  Thus, the mandates of rule 9 were met as to each count, warranting joinder.  Moreover, we note that experienced trial counsel did not move to sever the counts, and we cannot say that the failure to seek severance was not a sound tactical decision.  See Commonwealth v. Teti, 60 Mass. App. Ct. 279, 289 (2004) (attorney may strategically choose not to seek severance).  Indeed, the defendant was not foreclosed by the joinder from pursuing a "particular tactic" at trial, as his theory of the case was that the allegations were concocted through collusion among the victims, which was best played out through a trial in which all of the victims testified.  The fact that this tactical decision did not result in an acquittal does nothing to support an appellate argument that the defendant was prejudiced and the counts should have been severed.  See Commonwealth v. Spray, supra.  We conclude that there was a sound basis for trial counsel to refrain from seeking a severance of the counts and that the judge did not abuse his discretion, considering the parameters of rule 9, in deciding that severance was not "in the best interests of justice."

3.  First complaint testimony.  The defendant next argues that the judge abused his discretion in allowing witnesses to testify to statements beyond the scope of the first complaint doctrine.  This argument lacks merit.  The Commonwealth called a first complaint witness for each victim, and the judge gave a

first complaint curative instruction for each witness.  In defense counsel's opening and in his cross-examination of the victims, he alluded to and introduced information that exceeded the scope of the first complaint doctrine in an effort to establish that the victims had colluded, or been manipulated, to accuse the defendant.  For example, when cross-examining Kim, defense counsel asked whether her aunts told her that the defendant had abused them and whether Kim told a police officer that something came out of the defendant's penis during one of the assaults.  In response, the Commonwealth presented evidence that exceeded the bounds of the first complaint doctrine. Defense counsel did not object, except in one instance.

We review the admission of first complaint testimony for abuse of discretion.  Commonwealth v. Aviles, 461 Mass. 60, 73 (2011) ("The judge who is evaluating the facts of a particular case is in the best position to determine the scope of admissible evidence, keeping in mind the underlying goals of the first complaint doctrine").  It is undisputed that first complaint testimony is limited to the "details of the alleged victim's first complaint of sexual assault and the circumstances surrounding that first complaint as part of the prosecution's case-in-chief." Commonwealth v. King, 445 Mass. 217, 243, 246 (2005), cert. denied, 546 U.S. 1216 (2006) (explaining that a first complaint witness may testify to her observations during

the complaint and conversations or events "that culminated in the complaint"). The Commonwealth may not present multiple first complaint witnesses or introduce "[e]vidence that a complainant repeatedly complained of a sexual assault to several different persons." Id. at 243. The trial judge is required to give a standard limiting instruction to the jury to the effect that first complaint testimony is not to be considered as evidence that the crime occurred. Id. at 247-248.

In this case, the judge followed first complaint protocol and gave the required limiting instructions. It was defense counsel who alleged that the victims fabricated their accusations and first brought out statements that exceeded permissible first complaint testimony, which opened the door to further testimony beyond the scope of the first complaint doctrine. A review of the record leads us to conclude that this was a reasonable trial tactic in marshalling a defense. Once the defendant "opened the door" to these statements, the Commonwealth was appropriately permitted to explore the contents and the context of the statements in more detail. See Commonwealth v. Saunders, 75 Mass. App. Ct. 505, 510 (2009) (testimony beyond scope of first complaint doctrine is admissible "for the independent purpose of rebutting the

inferences raised by the defendant's inquiries").  We find no abuse of discretion.[7]

4.  _Evidentiary rulings_.  The defendant argues that a series of evidentiary rulings by the judge deprived him of a fair trial.  The defendant first claims that the judge erred in allowing the Commonwealth's motion in limine to admit testimony that the defendant abused his stepdaughter, Sara, in order to show the defendant's intent, state of mind, and a common pattern or course of conduct toward the young women in his family.  We disagree.  We review evidentiary rulings, such as a ruling on a motion in limine, for abuse of discretion, and we will only find error if the defendant shows that "no conscientious judge, acting intelligently, could honestly have taken the view expressed by him."  Commonwealth v. Spencer, 465 Mass. 32, 48 (2013), quoting from Davis v. Boston Elevated Ry. Co., 235 Mass. 482, 502 (1920).

Although evidence of bad acts is inadmissible to show a person's propensity to commit "the crime charged," Commonwealth v. King, 387 Mass. 464, 469 (1982), it may be "admissible for

_____

[7] The defendant also argues that Ann, in serving as a first complaint witness for Kim, was improperly permitted to testify that Kim looked upset about going to visit the defendant right before she disclosed her abuse.  Defense counsel objected.  As the first complaint doctrine permits a first complaint witness to testify to "circumstances surrounding that first complaint," we find no abuse of discretion.  Commonwealth v. King, 445 Mass. at 243.

other purposes," Mass. G. Evid. § 404(b) (2014).  For example, "such evidence 'may be admissible, if relevant, to show a common scheme or course of conduct, a pattern of operation, absence of accident or mistake, intent, or motive,'" so long as the evidence is "related in time, place, and/or form to the charges being tried."  Commonwealth v. Walker, 442 Mass. 185, 202 (2004), quoting from Commonwealth v. Barrett, 418 Mass. 788, 793-794 (1994), and Liacos, Brodin, & Avery, Massachusetts Evidence § 4.4.6, at 155 (7th ed. 1999).  In this case, the bad acts evidence and the crime for which the defendant was charged were certainly not unrelated.  Sara testified that when she was around eleven years old, the defendant touched her vagina with his hand while Kim was asleep in the room.  The defendant was silent during the incident.  The victims were at a similar age at the time of abuse, had family connections to the defendant, and were abused in similar environments and in similar ways.  Such commonalities might indicate that the defendant was engaged in a "pattern" or "common scheme or course of conduct."  The incidents were certainly related in "place" and "form."  Thus, the evidence was relevant and admissible for a permissible purpose.

Additionally, bad acts evidence is only admissible where its prejudicial effect does not outweigh its probative value.  Commonwealth v. Butler, 445 Mass. 568, 576 (2005).  Here, the

judge instructed the jury that Sara's testimony "may not and indeed must not be considered . . . as any evidence that [the defendant] has a bad character or as evidence that he has a propensity to commit the crimes that have been charged in this case" and that the jury should only consider the bad acts evidence if the jury found it believable, relevant, and probative "of the issue of the defendant's intent or state of mind at the time of the alleged rapes and indecent assaults and batteries and on the issue of whether he demonstrate[d] a pattern or a common course of conduct." The judge repeated a similar instruction in his final instructions to the jury. Given these repeated curative instructions and our review of the record, we conclude that the prejudicial value of the evidence did not outweigh its probative value. See Commonwealth v. Walker, supra. We further conclude that the judge did not abuse his discretion in allowing the motion in limine.

The defendant also claims that the judge erred in permitting Beth to testify during redirect examination that the defendant attempted to kiss her. "The scope of redirect examination is within the sound discretion of the trial judge," and the defendant bears "a heavy burden" to show an abuse of that discretion. Commonwealth v. Arriaga, 438 Mass. 556, 577 (2003), quoting from Commonwealth v. Mattais, 387 Mass. 79, 92 (1982). We will not find such abuse where the defendant "opened

the door" for the Commonwealth's rebuttal.  Ibid.  In this case, the Commonwealth did not elicit testimony about the kiss until after defense counsel elicited testimony that the witness did not like the defendant.  Thus, the rebuttal testimony was permissible during redirect examination in order to explain why the witness disliked the defendant.  We find no abuse of discretion.

Next, the defendant argues that the judge erred in refusing to grant a mistrial after Beth extemporaneously testified that the maternal grandfather received an eight-year sentence for sexually abusing children.  After denying the motion for a mistrial, the judge immediately struck the testimony from the record and gave a curative instruction.  "The decision whether to declare a mistrial is within the discretion of the trial judge."  Commonwealth v. Bryant, 447 Mass. 494, 503 (2006).  Indeed, "[w]here a party seeks a mistrial in response to the jury's exposure to inadmissible evidence, the judge may 'correctly rel[y] on curative instructions as an adequate means to correct any error and to remedy any prejudice to the defendant.'"  Ibid., quoting from Commonwealth v. Kilburn, 426 Mass. 31, 37-38 (1997).  In deciding the appropriate cure for improper testimony, the judge may have considered, among other factors, that the testimony did not bear on the charged conduct, that the testimony was a surprise to both parties, and that

"[j]urors are presumed to follow a judge's instructions, including instructions to disregard certain testimony." Commonwealth v. Roby, 462 Mass. 398, 413 (2012), quoting from Commonwealth v. Williams, 450 Mass. 645, 651 (2008). Given these considerations and our review of the record, we conclude that there was no abuse of discretion.

The defendant also argues that the Commonwealth improperly questioned him as to whether Sara lied when she testified that Nina was the first person she told about her grandfather abusing her. Defense counsel objected, the judge sustained the objection, and the defendant did not answer the question. "It is well-established, and we have repeatedly stated, that it is improper to ask a witness at trial to assess the credibility of other witnesses' testimony." Commonwealth v. Colon, 64 Mass. App. Ct. 303, 306-307 (2005). Thus, we review the prosecutor's improper question, to which defense counsel objected, for prejudicial error. See Commonwealth v. Ward, 15 Mass. App. Ct. 400, 401-402 (1983). We consider that the error here consisted of just a single question, the defendant did not answer the question, and the judge gave a curative instruction. See id. at 402. Accordingly, we conclude that there was no prejudice.

Finally, the defendant argues that the prosecutor improperly gave witnesses signals as to how they should answer questions while testifying. At trial, defense counsel raised

the objection about improper signaling during an unrelated side-bar discussion.  The judge responded to defense counsel's concern by stating to the prosecutor, "[C]ounsel, if -- I should point out to you yesterday you signaled the witness with two fingers up when you asked her about a certain number of years, all right?  So let's not get into this nonsense."  The defendant did not renew his objection.  On appeal, the defendant does not provide any evidence as to what the prosecutor allegedly did at trial or as to how this "signaling" affected the trial.  Rather, the defendant simply suggests that such signaling occurred, it was error, and that it, along with other alleged errors throughout the trial, made the trial fundamentally unfair.  On this record, we decline to find that the trial was fundamentally unfair.

<u>Judgments affirmed</u>.

<u>Orders denying motion for new trial and to reconsider affirmed</u>.