After a jury trial, the defendant was convicted of aggravated rape of a child, of rape of a child by force, and on four indictments charging indecent assault and battery on a child under fourteen.[2] On appeal he contends the judge admitted improper first complaint evidence, gave defective first complaint instructions, and wrongly permitted the prosecutor to read aloud from the victim's hospital records. We affirm.
Discussion. 1. First complaint evidence. The defendant argues that the judge erroneously allowed Detective Michael Donovan, who investigated Estelle's[3] allegations that the defendant sexually assaulted her, to testify as an additional fresh complaint witness. Specifically, the defendant argues that Donovan should not have been permitted to explain the SAIN[4] interview process, to testify that he received sexual assault investigation training, to refer to Estelle as the "victim," and to testify that child interview specialists are trained "[t]o make sure the victim is telling the truth."
The first complaint doctrine generally allows only the sexual assault complainant and the recipient of the first complaint to testify about the substance and circumstances of the first complaint. See Commonwealth v. King, 445 Mass. 217, 218-219 (2005), cert. denied, 546 U.S. 1216 (2006). However, "the admission of multiple reports of a victim's allegations of rape is permissible where the evidence serves an independent purpose and is necessary to present a fair and accurate picture of the Commonwealth's case." Commonwealth v. Saunders, 75 Mass. App. Ct. 505, 510 (2009). Moreover, when the defendant is the first to introduce statements exceeding the scope of the first complaint doctrine to pursue a defense that the victim fabricated the allegations, the prosecution may "explore the contents and the context of the statements in more detail," Commonwealth v. Torres, 86 Mass. App. Ct. 272, 278 (2014), and present evidence to "rebut questions raised by the defendant." Commonwealth v. Kebreau, 454 Mass. 287, 298-299 (2009). Testimony regarding a police investigation is also admissible for "the independent purpose[ ] of providing background information." Commonwealth v. McCoy, 456 Mass. 838, 847 (2010). "We review the admission of first complaint testimony for abuse of discretion." Torres, 86 Mass. App. Ct. at 277.
a. The SAIN interview process. Over the defendant's objection on relevance grounds, Donovan described the purpose of a SAIN interview, how it is conducted, and the individuals present. Donovan also testified that he was present for Estelle's two SAIN interviews, that both followed proper protocols, and that the second interview was conducted to clear up an uncertainty in Estelle's account.
The judge did not abuse her discretion by admitting this testimony. In his opening statement, defense counsel introduced the fact that Estelle gave two separate SAIN interviews with significant discrepancies: "If the truth was being told, these discrepancies simply would not exist." When cross-examining Estelle, defense counsel attempted to impeach her credibility by emphasizing these inconsistencies.
By using the substance of Estelle's SAIN interviews to impeach her credibility, the defendant opened the door for the Commonwealth to "explore the contents and the context of the statements in more detail." Torres, 86 Mass. App. Ct. at 278. See Kebreau, 454 Mass. at 298-299. The Commonwealth properly rebutted the defendant's theory that Estelle fabricated her allegations with Donovan's explanation of why the prosecution team reinterviewed her: to clear up a discrepancy. See ibr.US_Case_Law.Schema.Case_Body:v1">id.[5]
b. References to the "victim." The defendant next contends that Donovan's references to Estelle as the "victim" on direct examination amounted to reversible error. Because the defendant did not object, we review for "a substantial risk of a miscarriage of justice." McCoy, 456 Mass. at 850. "A substantial risk of a miscarriage of justice exists when we have a serious doubt whether the result of the trial might have been different had the error not been made" (quotation omitted). Id.
While the better practice is to refer to the complainant as the "alleged victim," Donovan's references to Estelle as the "victim" did not create a substantial risk of a miscarriage of justice. See Commonwealth v. Cadet, 473 Mass. 173, 181 (2015) ; Commonwealth v. Krepon, 32 Mass. App. Ct. 945, 947 (1992). Donovan referred to Estelle as the victim only a handful of times; his use of the term was not as pervasive as the prosecutor's references to the victim "throughout the trial and in his closing argument" in Cadet, 473 Mass. at 180-181, which were held not to create a substantial risk of a miscarriage of justice. "We assume 'a certain degree of jury sophistication,' Commonwealth v. Kozec, 399 Mass. 514, 517 (1987), and do not think it likely that the jury were swayed by the repeated references to the 'victim.' " Id. at 181.
c. Implicit vouching. The defendant contends for the first time on appeal that the judge improperly allowed Donovan to testify that SAIN interviewers are trained to ask nonleading questions "[t]o make sure that the victim is telling the truth." "[I]t is improper to ask a witness at trial to assess the credibility of other witnesses' testimony." Torres, 86 Mass. App. Ct. at 280, quoting Commonwealth v. Colon, 64 Mass. App. Ct. 303, 306 (2005). Furthermore, testimony suggesting that government officials believed the victim's allegations is inadmissible. Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008). Commonwealth v. Revells, 78 Mass. App. Ct. 492, 498-499 (2010).
Donovan's statement would have permitted the jury to infer that government officials believed Estelle's allegations because the SAIN interview process ensured accurate testimony. This testimony impermissibly "create[d] the imprimatur of official belief in the complainant." Stuckich, 450 Mass. at 457. To the extent Donovan's statement was offered to explain the SAIN interview process, it had little, if any, probative value and should not have been admitted. Compare Kebreau, 454 Mass. at 298-299 ; Torres, 86 Mass. App. Ct. at 277-278.
Nonetheless, we do not discern a substantial risk of a miscarriage of justice. The Commonwealth presented ample evidence for the jury to evaluate Estelle's credibility: she testified about the assaults, her friend Jim (a pseudonym) testified as the first complaint witness, and Estelle's mother and brother testified as well. The defendant thoroughly cross-examined Estelle regarding inconsistencies between her trial testimony, her two SAIN interviews, and her statements to hospital staff. "[I]n the context of the entire trial," McCoy, 456 Mass. at 850, Donovan's remark was a passing reference unlikely to have materially affected the outcome. See Kebreau, 454 Mass. at 298 ; Revells, 78 Mass. App. Ct. at 498.
2. Jury instruction. The defendant also argues that the judge's erroneous omission of a sentence from the first complaint jury instructions required by King, 445 Mass. at 247, created a substantial risk of a miscarriage of justice. "[I]n determining whether a jury instruction is defective, we view the charge in its entirety and consider how it likely would have been interpreted by a reasonable juror in the over-all context of the instructions" (quotation omitted). Commonwealth v. Starkweather, 79 Mass. App. Ct. 791, 804 (2011). "We presume that the jury followed the judge's proper instructions in assessing the first complaint testimony." Commonwealth v. Lewis, 91 Mass. App. Ct. 651, 664 (2017).
Prior to the testimony of the first complaint witness, Jim, the judge instructed the jury substantially in accordance with King. However, after stating "You may consider this testimony ... about the first complaint for specific limited purposes," the judge omitted the following sentence: "You may not consider this testimony as evidence that the assault in fact occurred." King, 445 Mass. at 247-248. During the final jury charge, the judge repeated the instruction mandated by King, this time including the previously omitted language.[6] At no time did the defendant object to the instructions.
The judge should have instructed the jury prior to Jim's testimony not to use his testimony as evidence the assault in fact occurred. However, this omission did not create a substantial risk of a miscarriage of justice. The judge's initial instruction admonished the jury to use Jim's testimony for its proper, limited purpose: "to permit you to find that the testimony that [Estelle] gave is supported or detracted by" Jim's testimony. Moreover, Jim did not testify about the substance of Estelle's first complaint on direct; he merely clarified some terms he used in his messages to Estelle. Most importantly, the judge's final charge, given on the same day as Jim's testimony, thoroughly explained the first complaint doctrine as King required. Taken together, the judge's instructions sufficiently mitigated the risk that the jury used Jim's testimony as proof that the assaults in fact occurred. See Lewis, 91 Mass. App. Ct. at 664.
3. Hospital records. Finally, the defendant argues, again for the first time on appeal, that the judge abused her discretion in allowing the prosecutor to read into the record statements from Estelle's postassault hospital records. The defendant now claims these statements were inadmissible hearsay that improperly corroborated Estelle's testimony.
Even assuming that this evidence was hearsay, the prosecutor used it permissibly. Estelle's hospital records were admitted in evidence at the defendant's request to support his theory that Estelle fabricated her allegations. Defense counsel referenced these records in his opening statement, during his cross-examination of Estelle, and in his closing argument. The defendant having introduced the hospital records in evidence, the prosecutor was free to use them as well. See Commonwealth v. Roberts, 433 Mass. 45, 48 (2000) (evidence admitted with no limitations may be used for all purposes).[7]
Judgments affirmed.

The defendant pleaded guilty to the subsequent offense component of three of the indictments.

A pseudonym.

"SAIN" is an acronym for the Sexual Assault Intervention Network.

The defendant also maintains the judge should have excluded Donovan's testimony that he received sexual assault investigation training, testimony to which the defendant did not object at trial. We disagree. Donovan's sexual assault investigation training was properly admitted as background information. See McCoy, 456 Mass. at 847.

The judge stated, "You may not consider ... [this] testimony as evidence that the crime in fact occurred."

In any event, this evidence did not prejudice the defendant. "Where the inconsistencies contained in the cumulative first complaint testimony were more important to the defense than the Commonwealth, there is no harm to the defendant." McCoy, 456 Mass. at 851.